# THE MAYOR AND COUNCIL OF HAGERSTOWN *vs.* DANIEL·DECHERT.

*Article 82 of the Code of Public General Laws— Powers bestowed on the Officers of Hagerstown by its Charter — Statutes, Constitutional in part and Unconstitutional in part—Authority of a Mayor as Conservator of the Peace—Evidence in an Action under Article 82 of the Code.*

The Act of incorporation of the town of H, passed in 1847, provided that " the Mayor, in virtue of his office, shall have and exercise all the jurisdiction and powers of a justice of the peace, and shall be entitled to the same fee." By the Constitution of 1851, Art. 4, the officers were defined in whom the judicial power of the State was vested. The Act by which the town of H was incorporated, was re-enacted in the Code in 1860. HELD :

1st. That after the adoption of the Constitution, the Legislature had no· power to appoint a justice of the peace, nor could they vest judicial power in any other officer except such as were enumerated in the 1st section of the 4th Article of the Constitution.

2d. The adoption of the Constitution stripped the Mayor of the judicial power or jurisdiction appertaining ,to the office of a justice of· the·peace, which had been conferred on him by the Act of 1847 ; nor could such. jurisdiction be conferred, constitutionally, by the Code in 1860.

3d. The Constitution, while depriving the Mayor of his judicial powers as a justice of the peace, did not deprive him of his police powers as a conservator of the peace, which it was entirely competent for the Legislature to confer on him.

4th. The Act of incorporation of 1860, is constitutional and valid, so far as it confers police powers on the Mayor, while it is inoperative·only so far as it might be construed as vesting in him judicial power.

A Statute may be good in part, while other parts are invalid'; and, if a portion be unconstitutional, the Court is not authorized for that reason to declare the whole void.

The constitutional and the unconstitutional provision may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall—the question is, whether they are essentially and inseparably connected in substance.

As a conservator of the peace, a Mayor has full authority to call on the citizens to aid in the prevention and suppression of riots, and their legal duty is to obey the call.

In an action against a municipal corporation, under Article 82 of the Code, the declarations and conduct of the officers of the town are admissible to show want of reasonable diligence on their part to prevent riots, indifference to the discharge of their official duty, and sympathy with the spirit and temper of the mob.

Where, by the charter of a town, neither the Mayor, nor the other authorities of the town, have any lawful power to create or employ a police force for the purpose of preventing or suppressing riots; nor any power to call on the citizens for aid for that purpose. *Query.*—Whether any liability can devolve on the town, under the provisions of Article 82 of the Code, for the destruction of the property of a citizen by a mob?

APPEAL from the Circuit Court for Washington County.

This suit was brought in the Circuit Court for Washington county, to recover damages for the destruction of the appellee's printing office by a mob, on the night of the 24th of May, 1862. To the plaintiff's declaration the defendant pleaded the five following pleas:

1st. That it is not guilty of the wrongs alleged in the plaintiff's declaration.

2d. That at the time of the alleged wrongs, as stated in the said declaration, this defendant did not have and enjoy power and authority (under the Acts of the General Assembly of the State of Maryland) to employ a police force, as alleged and averred in the plaintiff's declaration.

3d. That the defendant did not have and possess power and authority at the time of the wrongs alleged in the said declaration, under the Acts of the General Assembly of Maryland, to call in the aid of the citizens of Hagerstown to protect and defend the property of the citizens of Hagerstown, within the said corporate limits, as alleged in the said declaration.

4th. That the defendant did not have and enjoy, at the time of the alleged wrongs stated in the plaintiff's declaration, power and authority, under the Acts of the General Assembly of Maryland, to employ a police force to protect

and defend the property of the citizens of the said town, within the corporate limits of Hagerstown, as averred in the said declaration.

5th. That the defendant, at the time of the alleged wrongs in the plaintiff's declaration mentioned, did not have and possess power and authority, under the Acts of Assembly aforesaid, to employ a police force and call in the aid of the citizens of Hagerstown, in the said county, to protect and defend the property of the citizens of the said town within the corporate limits thereof, as alleged in the plaintiff's declaration.

The plaintiff demurred to the second, third, fourth and fifth pleas, and the Court sustained the demurrer.

At the trial of the cause the Court, on application of the defendant's counsel, signed four bills of exception.

*First Exception:* The plaintiff shewed that he was owner of a printing office in Hagerstown, and being apprehensive that this property would be destroyed, demanded of the Mayor protection for the same. The plaintiff's counsel thereupon asked the witness, who was the plaintiff, what the Mayor said in reply to this demand. To this testimony the defendant objected, but the Court overruled the objection. Whereupon the defendant excepted.

*Second Exception:* The plaintiff, in the further progress of the cause, introduced a witness who stated that some days before the riot, he had a conversation with the Mayor of Hagerstown, in which the witness told him of his apprehensions that injury would be inflicted on the Plaintiff's property. The witness was then asked by the plaintiff, what was the Mayor's reply to him. To this testimony the defendant objected, and the Court overruling the objection, exception was taken.

*Third Exception:* A witness having stated that on the afternoon of the day of the riot, which occurred at night, he saw one of the Councilmen of the town in conversation with persons around him. The plaintiff's attorney then asked the

Mayor and Council of Hagerstown *vs.* Dechert.

witness what the Councilman said. To this the defendant objected, but the Court overruled the objection; whereupon the defendant excepted.

*Fourth Exception:* Wm. M. Tice, a Justice of the Peace, being the witness on the stand, was on the cross-examination asked by the plaintiff if the Mayor had called on him as a Justice of the Peace to assist in the preservation of the order of the town on the occasion of the riot. The defendant objected to the testimony, and the objection being overruled, exception was taken.

The plaintiff submitted the following prayers:

1. If the jury shall find from the evidence, that the defendants had good reason to believe that a riotous or tumultuous assemblage, too strong to be resisted by the plaintiff, without the aid of the city authority of Hagerstown, was about to take place at the printing office of the plaintiff, on Saturday, 24th of May, 1862, in time to prevent the same, and that the defendants had the ability of themselves or by the aid of the citizens of said city of Hagerstown, to have prevented the said assemblage before the injuries complained of were committed, and that the defendants did not use reasonable diligence in the employment of the powers entrusted to them for the purpose of preventing or suppressing the said riotous or tumultuous assemblage, and that the property of the plaintiff, situate in said city, was destroyed or injured by said assemblage, then the plaintiff is entitled to recover.

2. If the jury shall find from the evidence, that the authorities of the city of Hagerstown had good reason to believe that a riotous or tumultuous assemblage was about to take place, in the said city, on the evening of the 24th of May, 1862, in time to have prevented the same from injuring or destroying the property of the plaintiff there situate, and that the city authorities had the ability of themselves, or with the aid of the citizens of said city, to have prevented said injury or destruction, and that the civil authorities did not use all reasonable diligence and all the powers entrusted to them

for the prevention and suppression of said riotous and tumultuous assemblage, and that the property of the plaintiff, situate in said city, was destroyed or injured by said unlawful assemblage, then the plaintiff is entitled to recover.

3. If the jury shall find from the evidence, that a riotous and tumultuous assemblage had taken place in the city of Hagerstown, on the evening of May 24th, 1862, and after it had taken place, that the authorities of said city had notice of the same in time to prevent injury or destruction of the property of the plaintiff there situate, by said assemblage with the aid of the citizens of said city, and that the authorities of the city, of themselves or with the aid of the citizens of said city, had the ability to prevent said injury, and that the property of the plaintiff was injured or destroyed by said assemblage, and said authorities did not use due diligence to prevent said injury, and did not call to their aid the citizens of said city for the purpose of preventing said injury, then the plaintiff is entitled to recover.

4. If the jury shall find a verdict for the plaintiff, then in estimating the damages, they are to give the plaintiff the full amount of any damages they may find was done to his property, and they have the right to add to the same, interest from the time the said damage occurred, up to the time of finding their verdict.

5. If the jury shall find from the evidence, that the Mayor of Hagerstown was notified by William Beirshing, one of the City Council, two or three days prior to the 24th of May, 1862, that a riotous assemblage was about to take place in said city, for the purpose of attacking and injuring the printing office of the plaintiff there situate, and that on the afternoon of the 24th of May, 1862, the plaintiff notified the Mayor that he anticipated that a riotous assemblage was about to take place, and would attack and injure his property, and asked the Mayor for protection to his property, and that the Mayor refused to make any effort to protect said property, and that a riotous and tumultuous assemblage did

take place on that evening, and did destroy and injure the property of the plaintiff, and if they shall further find that after said notice, there was sufficient time for the Mayor of the city to have called to his aid the citizens of said city, and that with the aid of the said citizens, the said tumultuous assemblage could have been suppressed, and injury to the plaintiff's property have been prevented, then the plaintiff is entitled to recover.

The defendant prayed the Court to instruct the jury as follows:

1st. That the Act of Assembly under which the plaintiff is suing contemplates the intervention by the corporate authorities of the corporate or municipal power for the suppression of riotous or unlawful assemblies, and not by means of mere personal persuasion, and the failure or refusal of the Mayor, members of the Council, or either of them, to intervene to suppress a riotous or unlawful assemblage by using their personal and individual influence, is not such an omission of public duty as renders an incorporated town or city liable for loss of property sustained by a citizen, arising from a riotous or unlawful assembly. Therefore, if the jury find that the plaintiff's property was injured or destroyed by a riotous or unlawful assemblage within the jurisdiction of Hagerstown, and that the Mayor and Council of Hagerstown had notice that a mob was imminent, and threatening the plaintiff's property, and that the said Mayor and Councilmen refused or failed to interfere, by means of their personal influence over the rioters, to protect the property of the plaintiff. the corporation of Hagerstown is not liable for any loss of property on account of such failure or refusal.

2d. That, by the several Acts of Assembly incorporating the town of Hagerstown, in force at the time the alleged riot mentioned in the declaration of the plaintiff, there were no provisions conferring upon the said corporation power to create or employ a regular or special police force for the government of said town, or for the purpose of preventing or suppressing

riots within the jurisdiction of the said town, nor was there any power or authority conferred by the said Acts of Assembly upon the said corporation to call out the citizens of the said town to aid in the government of said town, or to prevent or suppress riots, and therefore the plaintiff is not entitled to recover in this action, notwithstanding the jury should find that the premises of the plaintiff were invaded by a mob or tumultuous and riotous assemblage, and his property destroyed, as alleged in said plaintiff's declaration.

3d. That if the property of the plaintiff was destroyed or injured, as alleged in the plaintiff's declaration, and that the corporate authorities had notice thereof, as therein alleged, but further find, from the evidence, that the mob or riotous assemblage which destroyed the plaintiff's property was too strong to have been resisted by the corporate authorities, and could not have been suppressed by any power or force at the command and under the control of the Mayor, then the plaintiff cannot recover.

4th. If the jury should find that the riotous or tumultuous assemblage took place, and the property was destroyed or injured thereby, as charged in the plaintiff's declaration, and if they should further find that the corporate authorities were unable of themselves to suppress said riot, yet the defendants are not liable in this action, unless the jury should further find that the said civil authorities having the authority to do so, called on the citizens of said town to aid in the prevention or suppression of said riotous or tumultuous assemblage.

The Court refused to grant the prayers of the defendant, but granted the prayers of the plaintiff. To this ruling the defendant excepted.

The remaining facts are sufficently detailed in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*A. K. Syester, J. Thomson Mason* and *Thomas Rowland,* for the appellant.

The first question in this case arises on the pleadings, and raises the point whether it was any part of the inquiry to know whether the public municipal authorities of Hagerstown had power to employ a police force, or call in the aid of the citizens to prevent injury, &c.? *Stephen's Plead.,* 144; *Dilley vs. Roman,* 17 *Md.,* 341.

It arose as follows:

The appellee's declaration stated, in effect, that his property, within the corporate limits of the appellant, was destroyed by a riotous assemblage of people, and that the appellant, being a municipal corporation, invested with *power* "to *employ a police force,* and call in the aid of the citizens," for the purpose of protecting the property of the citizens, and that, having notice of the riotous assemblage, did not prevent the riot, &c., &c.

In each of his five counts the appellee averred that the appellant *had the power to employ, &c., and call in the aid, &c.* And to each of these averments the appellant pleaded that it had *not* the rights and powers ascribed in the declaration.

To these pleas, second, third, fourth and fifth, the plaintiff demurred, and the Court sustained the demurrer.

In sustaining that demurrer the Court determined and decided that it was no part of a legitimate inquiry in the case, whether the corporate authorities had power to employ a police force, or call in the aid of the citizens; and that, without any possible means of preventing the injury, they were, nevertheless, responsible in damages, *and liable for the amount of loss.*

The second section of Article 82, of the Code of Public General Laws, declares that "*such liability shall not devolve,*" unless the corporate authorities shall have had notice of the riotous assemblage in time to prevent the injury, either by its own police force or by the aid of its citizens.

It being the intention of the Article that no such liability shall devolve, unless the authorities, having notice, have also "the *ability*, of themselves or with their citizens, to prevent the injury." And, unless the corporate authorities, *under its charter*, had power either to employ a police force or to call out and command the body of the citizens, they had neither "the ability of themselves" nor with their own citizens to prevent the injury. The 82d Article of the Code cannot be construed to mean that the innocent and unoffending are to be involved in the same civil consequences, and subjected to the same damages with the guilty and offending, simply because they are all incorporated under a common name.

The public authorities must be shown to have wilfully refused the employment of instrumentalities at their command, and declined or failed to employ the public powers with which they were clothed, before those whose interest and power they represent can be held for damages under this Act.

The "*powers*" and "*abilities*" spoken of in the 82d Article of the Code, have reference to *public municipal powers*, the abilities with which the Mayor and Council were invested under their charter; and the entire population of the corporation were not intended to be held answerable for the conduct of a mob, unless the municipal authorities, the representatives of this *corporate power*, failed to make due and proper exercise of their *public corporate power*, to suppress and prevent mischief.

In order to ascertain these powers and abilities, the *charter* of the appellant must be consulted and interpreted.

Municipal corporations, like all others, enjoy no other powers than those expressly given. Their implied powers are limited to such as are necessary to carry into execution those expressly granted.  3 *Modern Rep.*, 12; *Hooper vs. Emery*, 14 *Maine*, 375; *Kyle vs. Malin*, 8 *Ind.*, 34; *Sharp vs. Spier*, 4 *Hill*, 85; *City of Rochester vs. Collins*, 12 *Barb.*, 559; *Wilcox on Municipal Corporations*, 297, 298 *and* 300; *Rex vs. Langley*, 2 *Ld. Raym.*, 1030; *Alley vs. Inhabitants*

*of Edgcomb,* 53 *Maine,* 446; *Grant on Corporations,* 370, 371, and authorities there cited.

As the riot occurred in Washington county, the responsibility for the damage inflicted, should be borne by the county, which had a public police, and not by the corporation of Hagerstown, which had none, and was not authorized by law to employ one.

The personal feelings and declarations of the Mayor had nothing to do in fixing responsibility in this case. The people were responsible, if at all, only for the failure to use the public powers of the corporation. *Martin vs. Brooklyn,* 1 *Hill,* 545.

The fourth exception was taken to the Court's overruling an objection made to the testimony of Tice.

This witness was a Justice of the Peace of the State, and was asked the question, whether the Mayor ever called on him to interpose his authority as a Justice, in the preservation of peace, on occasion of this riot? Under the law of this case, nothing but corporate powers were at the disposal of the Mayor and Councilmen. They were in no sense bound to invoke the aid of the State authorities. And the people of the town are not to be held answerable for a failure of the corporate officers, and especially of *any single one of them,* to apply for the interposition of any powers in the hands of a Justice of the Peace.

The evidence admitted, also tended to direct the attention of the Jury rather to the personal feelings of the Mayor, than to any official misconduct on the part of the corporate authorities.

*Henry Kyd Douglas, Z. S. Claggett* and *Wm. M. Merrick,* for the appellee.

By Article 82 of the Code, power and authority is expressly conferred upon the Mayor and Council of Hagerstown, to suppress a riot, either by its own police, or with the aid of the citizens of the town.

The 1st section, standing alone, makes every incorporated town or city liable, without restriction, for the destruction of property by a riot.

The 2d section limits the liability: 1st, No such liability shall be incurred by any town or city unless the authorities thereof had good reason to believe that the riot was about to take place; or, 2d, Having taken place, shall have had notice in time to prevent the destruction of property, either by its own police or with the aid of the citizens of the town; 3d, The authorities must have not only notice but ability of themselves, or with their own citizens to prevent the injury.

Who are clothed with power to prevent and suppress the riot? The answer is: The corporation themselves, either by its own police or with the aid of the citizens. It declares when they shall intervene and designates those who have the power, upon whom the obligation and duty is imposed, to put down the mob.

In the first part of the section power is given to the authorities to suppress, in the alternative, " either by its own police or with the aid of the citizens ;" and in the concluding part, the power is re-asserted and declared, viz: That no such liability shall devolve unless the authorities having notice have also the ability of *themselves*, or with *their own citizens* to prevent said injury.

The Mayor and Council of the town, with the aid of the citizens, are armed with authority to suppress the mob, and that duty specifically enjoined by the Statute has been wholly neglected.

The Mayor and Council are the representatives and agents of the people of the town, are created by the people, and the object of the statute is to punish the people themselves for permitting riots to take place, because the Mayor and Council can do nothing without the aid of the people.

The power being conferred upon the authorities of the town to suppress the riot, they had a right to employ all the means necessary to the execution of the power expressly granted.

The Mayor of a corporation is a conservator of the peace. 3 *Burn's Justice*, 4. The original jurisdiction of a Justice of the Peace extended only to conserve the peace; and by the Statute of Edward I, no other powers are given but that of keeping the peace.

By Art. 21, sec. 137 of the Code of Public Local Laws, &c., it is enacted that "The Mayor of Hagerstown in virtue of his office shall have and exercise all the jurisdiction and powers of a Justice of the Peace." But it is said that this is in contravention of the Constitution, which confides the judicial power to certain specifical classes of persons, among which the Mayor is not enumerated. The answer is: There is a distinction between the judicial powers of a Justice of the Peace and his office as a conservator of the peace. The statute only intended to confer upon the Mayor such powers as were consistent with the Constitution, and the judiciary will not intervene and arrest the exercise of wholesome legislative authority and declare the same unconstitutional, except *in clear cases only*. The intention of the statute is to authorize the Mayor to act ministerially as a conservator of the peace and not in a judicial capacity. It is not a judicial power, but a part of the police power as contradistinguished from the regular judiciary power of the State. *Schafer and Wife vs. Mumma*, 17 *Md.*, 336.

Under the act of incorporation, the Mayor of Hagerstown, in virtue of his office, possessed the jurisdiction and powers of a Justice of the Peace. In Maryland, a Justice of the Peace has the authority and jurisdiction given him at common law, except where his powers are increased or limited by statute. *Latrobe's Jus.*, sec. 1385.

At common law, it was the right and duty of Justices of the Peace, on occasion of riot, to disperse the assemblages, arrest the rioters, and, if need be, call upon all the people, except women, infants and clergymen, to assist them in the performance of those duties, just as it had been the like duty and power of the officers, known as Conservators of the

Peace, before the establishment of Justices. 3 *Burn's Just.*, 3, 4 *and* 108;. 4 *Burn's Just.*, 101; *Latr. Just.*, sec. 1395; *Rex vs. Pinney*, 5 *Carr & P.*, 254; *Rex vs. Kennett*, 5 *Carr & P.*, 282; *Reg. vs. Neale*, 9 *Carr & P.*, 431; 1 *Russ. on Crimes*, 286; 3 *Whart. Amer. Crim. Law*, sec. 2499.

As a Conservator of the Peace, the Mayor has the power to authorize any one to arrest another who shall be engaged in a riot. Where a statute gives jurisdiction over any offence, or power to require a person to do a certain thing mentioned ·in the statute, by implication, he has a right to employ the means to execute the power expressly granted. 1 *Bishop's Crim. Procedure*, secs. 634, 635.

BARTOL, C. J., delivered the opinion of the Court.

This action was instituted against the appellant, to recover damages for the destruction of the appellee's property, situated within the limits of Hagerstown, by a tumultuous assemblage, on the 24th day of May, 1862.

The decision of the case depends mainly upon the construction of the 82d Article of the Code, and involves also the question of the powers conferred on the Mayor and City Council by the charter.

The Code provides, in the *first* section, if property in any incorporated town be destroyed by a riotous assemblage, " the full amount of damage so done shall be recoverable by the sufferer, by a suit at law against the town within whose jurisdiction such riot or tumult occurred."

The second and third sections limit and define the liability. The second section declares that such liability shall not be incurred " unless the authorities thereof shall have had good reason to believe that such riot, or tumultuous assemblage was about to take place, or having taken place, shall have had notice of the same in time to prevent said injury or destruction, either by its own police, or with the aid of the citizens of such town. It being the intention of this article, that no such liability shall devolve on such town, unless the authori-

ties having notice have also the ability of themselves, or with their own citizens, to prevent said injury."

The third section exempts the town from liability, " when it is satisfactorily proved that the civil authorities and citizens, when called on by the civil authorities thereof, have used all reasonable diligence, and all the powers entrusted to them for the prevention or suppression of such riotous or unlawful assembly.

It appears, from the uncontradicted proof in the case, that on the evening of the riot, some hours before its occurrence, the plaintiff notified the Mayor of the danger to his property, which was threatened, and claimed protection, and no steps were taken or means used by the Mayor, or any of the authorities of the town, to prevent or suppress the mob.

Upon the question, whether, by reasonable diligence on the part of the town authorities, with the aid of the citizens, the mob might have been prevented, and the plaintiff's property saved from destruction, the evidence was conflicting.   But that question was submitted to the jury, and found by them against the defendant.   The position taken on behalf of the appellant, as the ground of exemption from liability, is that neither the Mayor nor the other authorities of the town had any lawful power to create or employ a police force for the purpose of preventing or suppressing riots, nor any power to call on the citizens for aid for that purpose; and it is contended that unless such powers have been conferred on the corporate authorities by the charter, no liability can devolve on the town under the provisions of the Code.

Assuming this to be the true construction of the Code, but without so deciding, for it is a point upon which the judges do not agree in opinion.   But conceding, for the purposes of this case, that the appellant's construction is correct, we are all of opinion that, by the Acts of Assembly incorporating the town, full and ample powers were conferred upon the Mayor to employ means for the preservation of the peace of the town, and to call on the citizens to aid in the prevention and suppression of the riot.

The Act of incorporation, Code, Vol. 2, Art. 21, sec. 137, provides that "the Mayor, in virtue of his office, shall have and exercise all the jurisdiction and powers of a Justice of the Peace, and shall be entitled to the same fee."

This provision was enacted in the original charter of the town, 1847, ch. 198, and it is argued that it was abrogated and annulled by the Constitution of 1851; and when re-enacted and incorporated in the Code in 1860, it was altogether inoperative and void, because, as it is supposed, it was inconsistent with, and in violation of the Constitution of 1851, then in force.

The provisions of the Constitution, to which we have been referred, are Art. 4, sec. 1, which defined the officers in whom the judicial power of the State was vested, and sec. 19 of the same Article, prescribing the manner in which Justices of the Peace should be elected and qualified.

It is very clear that, after the adoption of that Constitution, the Legislature had no power to appoint a Justice of the Peace, nor could they vest judicial power in any other officer except such as were enumerated in the first section of the fourth Article of the Constitution. When that Constitution was adopted, therefore, it stripped the Mayor of the judicial power or jurisdiction appertaining to the office of a Justice of the Peace, which had been conferred upon him by the Act of 1847; and it is equally clear, that such jurisdiction could not, constitutionally, be conferred upon him by the Code in 1860. But it by no means follows, that the 137th section of the Code was altogether inoperative and void. That section did not attempt to make the Mayor a Justice of the Peace, but to confer upon him certain powers as Mayor. It, in terms, gave him as Mayor, "*all the jurisdiction and powers of a Justice of the Peace.*" Now, some of the powers exercised by a Justice of the Peace, are judicial; he has jurisdiction to hear and decide cases, civil and criminal. So far as such jurisdiction is concerned, the 137th section of the Code is inoperative. But, in addition to the judicial functions of a Justice of the Peace,

he has important police powers as a Conservator of the Peace, not in any respect judicial in their nature, and which it was entirely competent for the Legislature to confer upon the Mayor of Hagerstown, and most essential for him to possess in order to enable him to perform his duties as Mayor, in the preservation of the peace of the town, and for the protection of the property of the citizens. Such power, in our opinion, were conferred on the Mayor by section 137, Article 21, of the Code. To that extent it is constitutional and valid, while it is inoperative only so far as it might be construed as vesting in him judicial power.

A Statute may be good in part while other parts are invalid. If a portion be unconstitutional, the Court is not authorized, for that reason, to declare the whole void. *State vs. Davis*, 7 *Md.*, 151.

In *Commonwealth vs. Hitchings*, 5 *Gray*, 482, where the same rule of construction was adopted, the Court said : " The Constitutional and the unconstitutional provision may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is, not whether they are contained in the same section, for the distribution into sections is purely artificial ; but, whether they are essentially and inseparably connected in substance."

We adopt that as a correct exposition of the law governing the Court in the construction of Statutes. The jurisdiction of a Justice of the Peace as a judicial officer, and the powers belonging to him as a conservator of the peace, are, in their nature, distinct and independent of each other ; and, while the former are not vested in the Mayor, the law has clothed him with the latter. As a conservator of the peace, he had full authority to call on the citizens to aid in the prevention and suppression of the riot, and their legal duty was to obey the call. " The general duty of the conservators of the peace, by the common law, is to employ their own and to command the help of others to arrest and pacify all such, who, in their pres-

Mayor and Council of Hagerstown *vs.* Dechert.

ence, and within their jurisdiction and limits, shall go about to break the peace." 3 *Burn's Jus.*, 4.

The powers and duties of conservators of the peace, in the prevention and suppression of a riot, are fully stated in the authorities cited in the appellee's brief, and we refer to them without repeating them here.

If it be conceded that the construction of the 82d Article of the Code contended for by the appellant is correct, it seems to us clear that the town cannot escape from responsibility for want of requisite power in the Mayor to act in the premises; and there was no error in granting the plaintiff's prayers by reason of their assuming the existence of the power, or in sustaining the demurrers to the second, third, fourth and fifth pleas.

We have discovered no error in granting the prayers of the appellee; they placed the law of the case fairly before the jury and gave to the defendants the benefit of every defence to which they were entitled under the Code.

For the reasons before stated, the first, second and fourth prayers of the defendants were properly rejected. Their third prayer was correct, and might have been granted with propriety, but its refusal is no ground for reversal, as the same proposition was contained in the plaintiff's prayers, which had been granted.

In the course of the trial four exceptions were taken by the appellant to rulings of the Circuit Court, on questions of evidence, which remain to be disposed of.

The evidence contained in the first and second bills of exceptions was admissible, for the purpose of proving the want of reasonable diligence on the part of the Mayor for the prevention of the riot after he was notified of the danger; it also tended to show his indifferene to the discharge of his official duty, and his sympathy with the spirit and temper of the mob.

For similar reasons, the evidence objected to in the third bill of exceptions was properly admitted, showing that Thorns-

25

burg, one of the members of the City Council, was present with the mob, aiding and encouraging the rioters. In an action of this kind, such testimony is admissible against the defendant. The general rule, that "a municipal corporation is not liable for the mis-feasance or non-feasance of one of its officers, in respect to a duty specifically imposed by statute on the officer," which was laid down in *Martin vs. Mayor of Brooklyn*, 1 *Hill*, 545, has no application to this case. The provisions of the Code under which the suit is brought, expressly make the corporation liable for neglect of duty on the part of the authorities or officers of the town.

It appears, by the fourth exception, that the plaintiff was permitted to ask the witness, William Tice, who was a Justice of the Peace, residing in Hagerstown, whether the Mayor had called on him to aid, in his official capacity, in the preservation of the peace of the town, on the occasion of the riot, and the defendant "objected to the question, as well as any answer thereto; but the Court overruled the objection, and the defendant excepted."

We think the question was legal and pertinent. It was competent to prove a failure or omission by the Mayor to call for the aid of Tice, who, as a Justice of the Peace, might have rendered more important assistance than a mere private citizen. Such omission on the part of the Mayor was evidence tending to prove a want of diligence in the discharge of his duty for the prevention or suppression of the riot.

Finding no errors in the rulings of the Circuit Court, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 12th March, 1870.)