Dickman, J.
Tbe main question for our consideration grows out of a provision in section 2759, of tbe Revised Statutes, which, it is contended, is in contravention of tbe constitution of this state. That section is as follows: “All unincorporated banks and bankers shall annually, between the first and second Mondays of May, make out and return to the auditor of the proper county, under oath of the owner or principal officer or manager thereof, a statement setting forth: First, — The average amount of notes and bills receivable, discounted or purchased in the course of business, by such unincorporated bank, banker or bankers, and considered good and ■ collectible. Second, — The average amount of accounts receivable. Third, — The average amount of cash and cash items in possession or in transit. Fourth, — The average amount of all kinds of stocks, bonds, including United States government bonds, or evidences of indebtedness, held as an investment, or in any way representing assets. Fifth, — The amount of real estate at its assessed value. Sixth, — The average amount of all deposits. Seventh, — The average amount of accounts payable, exclusive of current deposit accounts. Fighth, — The average amount of United States government and other securities that are exempt from taxation. Ninth, — The true value in money of all furniture and other property not otherwise herein enumerated. From the aggregate sum of the first five items above enumerated, the said auditor shall deduct the aggregate sum of the fifth, sixth, seventh, and such portions of the eighth items as are by law exempt from taxation, and the remainder thus obtained added to the amount of item nine, shall be entered on the duplicate of the county in the name of such bank, banker, or bankers, and taxes thereon shall be assessed and paid the same as provided for other personal property assessed and taxed in the same city, ward, or township.” The proposition sought to be established in behalf of the plaintiff in error is, that the part of section 2759 which requires that *517 county auditors, in levying taxes, yearly, upon unincorporated banks and bankers, shall deduct the aggregate sum of the fifth, sixth and seventh items, from the aggregate sum of the first five items of the section, is repugnant to section 3, of article 12, of the constitution, and is, therefore, void.
The real estate returned by the defendant in its statement of assets, was already taxed on the duplicate as real property, and its deduction, at its asssessed value for taxation, cannot be deemed unauthorized. The average amount of the United States government and other securities exempt from taxation, were obviously proper subjects of deduction from the fourth item of the bank’s return, embracing the average amount of all kinds of stocks, bonds, including United States government bonds, or evidences of indebtedness, held as an investment, or in any way representing assets. And, in our judgment, in determining from the bank’s return the amount of assets to be placed upon the duplicate for taxation, the bank was entitled to have deducted from the average amount of all its notes and bills receivable, discounted or purchased, and considered good and collectible, the average amount of all deposits, and the average amount of accounts payable, exclusive of current deposit accounts; but the deduction of the average amount of such deposits and accounts payable, from the average amount of the bank’s cash or cash items in possession, may well be held unallowable on constitutional grounds.
By the repeated decisions of this court, the second section of article 12, of the constitution, furnishes the governing principle for all laws levying taxes for general revenue, whether for state, county, township or municipal purposes. That section provides as follows: “ Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money; but burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose, and personal property, to an amount not exceeding *518 in value two hundred dollars, for each individual, may, by general laws,, be exempted from taxation; but, all such laws shall be subject to alteration or repeal; and the value of all property, so exempted, shall, from time to time, be ascertained and published, as may be directed by law.”
Under the comprehensive requirement of this section, property of every description, except the kinds specially exempted, whether owned by individuals or corporations, is made to bear an equal and just proportion of.the public burdens, by way of taxation, in return for the protection and advantages afforded by the government. The object of the section was to devise a system of taxation, that would approximate to the standard of perfect equality and uniformity. Hence, the provision requiring all property in the state to be taxed by a uniform rule, according to its true value in money. It might, however, be inquired, what need was there of section 8, of article 12, of the constitution, if it was not intended to establish a rule as to banks and bankers different from the rule respecting individuals. Section 3 reads as follows: “ The general assembly shall provide, by law, for taxing the notes and bills discounted or purchased, moneys loaned, and all other property, effects, or dues, of every description, (without deduction), of all banks, now existing, or hereafter created, and of all bankers, so that all property enqsloyed in banking, shall always bear a burden of taxation, equal to that imposed on the property of individuals.” Barring the two hundred dollars exemption for each individual, here is a plain indication that, as between banks and individuals, the property of each respectively should bear equal burdens of taxation. And, by section 4, of article 13, of the constitution, “ The property of corporations, now existing or hereafter created, shall forever be subject to taxation, the same as the property of individuals.” It is said in Exchange Bank of Columbus v. Hines, 3 Ohio St. 1, that there was no absolute necessity for section 4, for without it, section 2, of article 12, would have embraced existing and future corporations. “It was inserted,” says Teojbman, J., “out of abundant caution, that there might be no doubt either as to *519 existing or future corporations, what' would be the rule of taxation. So, section 8, of article 12, was inserted, that there might be no doubt how existing, as well as future banks and bankers, whether incorporated or unincorporated, were to be taxed; that there might be no doubt what property of theirs was to be the object of taxation; and further, to deprive them of even the two hundred dollars exemption, which may be permitted to individuals under section two. And hence it is that we find in it the words “ without deduction.” Such caution would naturally be induced by the fact, that for many years, the legislature had been accustomed to pass acts for the incorporation of turnpike, plankroad, canal, and probably railroad companies, that contained provisions exempting them from taxation. Bartley, C. J., in delivering the opinion of the majority of the court in the same case said: “ The third section requires all property employed in banking to be taxed ‘without deduction.’ The deduction here inhibited amounts simply to an express denial to the banks of the deduction allowed in the preceding section by the exemption in favor of individuals, and has reference to it.” But the standard of equality and uniformity in taxation has been established by the constitution, for corporations and individuals alike, and excepting the special exemptions from taxation mentioned in the constitution, the rule for taxation as to banks and bankers is not different from the rule as to individuals.
In Exchange Bank of Columbus v. Hines, supra, it was decided, that the tenth section of the tax law of April 13,1852, which allowed individuals and certain, corporations, in giving their tax lists, to deduct their liabilities from the amount of their moneys and credits, was repugnant to the constitution — inasmuch as taxes are required to be assessed on all property — and was consequently void; and that the constitution permitted no deduction of liabilities from moneys and credits. If the nineteenth section of the same law, which made it the duty of every bank to make out and return annually for the purpose of taxation, to the auditor of the county, a written statement of the average amount of notes *520 and bills by it discounted or purchased, had authorized the bank to deduct from such amount the amount of all legal Iona fide debts by it owing to any person, company or corporation, for a consideration received, it might, for the same reason, have been declared to be opposed to the constitution, for it would have permitted a deduction of the bank’s liabilities from the amount of its credits, according to the acceptation of that term as then adopted by the court. Notes and bills discounted or purchased by a bank were then treated as credits, and, in that sense, if the bank had been permitted to make such deduction while individuals were not, it could not have been said that, within the meaning of the constitutional provision, the property employed in the bank bore “a burden of taxation equal to that imposed on the property of individuals.”
Section 2, of article 12, in specifying the subjects of taxation, is as applicable to banks and banking companies as to individuals, and such applicability is as broad in regard to the species of property to be taxed, as in respect to the rule of taxation prescribed by the constitution. The section contemplates the taxing of the moneys and credits of banks and banking companies, as well as the moneys and credits of individuals. Section 3, of article 12, designates no form of property, and no kind of corporation, which, for the purpose of taxation, is not comprehended in the preceding section.
Recognizing the principle that credits, like all other kinds of property of banks, are to be taxed according to the standard fixed by the constitution, we come to the consideration of the question, what are credits within the meaning of our tax law? We do not propose to review the discussion on that subject in Exchange Bank of Columbus v. Hines. Brief citations will suffice. Thubman, J., in his concurring opinion, says: “Nor is it true that in legal signification, or in popular parlance, the term ‘ credits ’ means’ what is due to a man after deducting his liabilities.”, Ranney, J., in his dissenting opinion, uses the language: “ Credits are, by the constitution, to be taxed, and from the gross amount, each individual is, by the tenth section of the act of April 13. *521 1852, entitled to deduct his bona fide debts, and return the balance. The language of the law may not be strictly accurate. The evident meaning, however, is, that debts may be deducted from the gross amount of notes, accounts, and other choses in action, belonging to the individual. If the balance thus ascertained, is not the precise amount and value of the credits of the party against the world, both in legal and popular sense, I confess myself unable to understand the meaning of words or force of language.”
But more than thirty years ago, the term received a legislative exposition which has ever since remained undisturbed. Much deference is certainly due to legislative construction— if deliberatively given — as to the meaning of the language used in the constitution, and although it may not be conclusive upon the judicial tribunal, it is nevertheless entitled to great weight. In section 5, of the act of April 1, 1856, (53 Ohio L. 52,) it was enacted: “ The term ‘ credits,’ shall be held to mean the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for labor or service due or to become due to the person liable to pay taxes thereon,.....when added together, (estimating every such claim or demand at its true value in money,) over and above the sum of the legal bona, fide debts owing by such person.” The same provision is continued in section 2730 of the Revised Statutes. This statutory definition was the basis of the decision in Payne v. Waterson, 37 Ohio St. 121; it also entered into the decision in Insurance Company v. Capellar, 38 Ohio St. 560, and until changed by the legislature, we are not inclined to say that it should not be followed. Acquiescing in the meaning of the term as thus settled by statute, the amount of the credits of the defendant to be placed upon the duplicate for taxation, will be the excess of all its legal claims and demands over and above its bona fide debts; in other words, its credits will be estimated by deducting such debts from its legal claims and demands. What were the legal claims and demands of the defendant as set forth in the return made to the county auditor ? They are embraced in the first item of the bank’s statement, and *522 are denominated the average amount of all notes and bills receivable, discounted or purchased. From this amount is to be deducted the sum of the legal bona fide debts owing by the bank, which as appear in its return, are specified in the sixth and seventh items, and include the average amount of all deposits, and the average amount of accounts payable, exclusive of current deposit accounts.
As regards general deposits, the relation of banker and customer is that of debtor and creditor. 2 Am. & Eng. Ency. of Law, 93. A bank is accountable for the deposits it receives, as a debtor, and agrees to discharge those debts by honoring the checks which the depositors shall from time to time draw on it. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it. The bank is not bound to keep the money placed in-its custody, or deal with it as the property of its principal, but is, of course, answerable for the amount, because it has contracted, having received the money, to repay to the principal, when demanded, a sum equivalent to that paid into its hands. Foley v. Hill, 2 H. of L. Cas. 28; Bank of the Republic v. Millard, 10 Wall. (U. S.) 152. The average amount of all deposits, and of accounts payable, returned by the defendant in the sixth and seventh items of its statement, should, therefore, be deducted from the average amount of all its notes and bills receivable, discounted or purchased.
But this deduction should not be made from the average amount of cash and cash items in possession. Money or cash, for the most part, is regarded and treated as property in possession, having intrinsic value, and not the mere evidence of claims upon others. As property in hand, of a tangible nature, distinctive in itself, and determinable as to value without the uncertainty of mere choses in action, it cannot be reduced or diminished on the tax duplicate by deducting from it the liabilities of the owner — whether individual or corporation — without an infringement of the constitutional requirement that all property shall be taxed by a uniform rule. And that portion of section 2759 of the Revised Statutes, which directs the auditor to make the enumerated de *523 ductions, so far as it includes in the aggregate from which the deductions are to be made, the average amount of cash and cash items in possession, is, in our view, repugnant to the constitution and void, but is not otherwise objectionable on constitutional grounds.
The question arises, however, whether, if that portion of the section is declared wholly or in part unconstitutional and void, it may not result in invalidating the. entire section. As one section of a statute may be repugnant to the constitution without rendering the whole act void, so, one provision of a section may be invalid by reason of its not conforming to the constitution, while all the other provisions may be subject to no constitutional infirmity. One part may stand, while another will fall, unless the two are so connected, or dependent on each other in subject-matter, meaning or purpose, that the good cannot remain without the bad. The point is, not whether the parts are contained in the same section, for, the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance —whether the provisions are so interdependent that one cannot operate without the other. As said by Waite, C. J., in Allen v. Louisiana, 103 U. S. 80, 84, “ the point to be determined is whether the unconstitutional provisions are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature.” See Commonwealth v. Hitchings, 5 Gray 482; Commonwealth v. Kimball, 24 Pick 362; People v. Kenney, 96 N. Y. 294; Robinson v. Bidwell, 22 Cal. 379; Hagerstown v. Dechert, 32 Md. 369; Exchange Bank of Columbus v. Hines, supra; Railroad v. Commissioners, 31 Ohio St. 338; Gibbons v. Catholic Institute, 34 Ohio St. 289; Bowles v. State, 37 Ohio St. 35; Cooley on Const. Lim. (6th ed.), 211. The several items enumerated in section 2759, are separate and distinct in their character. Their respective average amounts are obtained by independent computations, and the full amount of the third item, when entered on the duplicate, could not interfere with the proper deductions authorized to be made from the *524 others. There may be an assessment of taxes at the annual rate upon the average amount of cash and cash items, while the amount of all the other taxable assets of the bank may be easily obtained from its tax return, by the method prescribed in the section, and thereupon placed on the duplicate for taxation. In the face of the constitutional provision, that laws shall be passed' taxing by a uniform rule all moneys, it could not be assumed that the general assembly would not have required unincorporated banks and bankers to return in the list of their taxable property the average amount of cash and cash items, if they had known that the clause directing the auditor to make a deduction from the amount so returned, was opposed to the organic law. And furthermore, the elimination of the right to make deduction from the average amount of cash and cash items in possession, would only leave the bank on a footing of that equality with individuals contemplated in the constitution — clothed with the right of deducting the sum of its legal Iona fide debts, from the sum of its legal claims and demands, and of being taxed on the excess as credits. The fact that the auditor could derive no authority under the statute to make any deduction from the average amount of the bank’s cash and cash items in possession, would not make it any the less his duty under other provisions of the tax law, to place upon the tax duplicate the bank’s taxable property, nor affect the method prescribed by law for enforcing the collection of the taxes assessed.
Was the auditor empowered, under section 1088, of the Revised Statutes, to correct the error in the amount of taxes for the year 1885, assessed against the defendant upon the then current duplicate, so far as it resulted from the erroneous deduction from the average amount of cash and cash items in possession, shown by the defendant’s return of its taxable property to the auditor for taxation ? That section provides: “ The auditor shall from time to time, correct all errors which he discovers in the tax-list and duplicate, either in the name of the person charged with taxes or assessments, the description of lands or other property, or when property exempt from taxation has been charged with tax, or in the *525 amount of sucb taxes or assessments.” It is not claimed that tbe return of the defendant was false within the meaning of the statute. On its face it contained all the facts necessary to making the correction. The action of the auditor was essentially clerical, and it only devolved upon him to enter on the duplicate for taxation the amount of cash returned in the defendant’s own figures. The correction, we think, was allowable under the decision in Insurance Company v. Cappellar, supra, a case, in which, the item of “ reinsurance,” under the head of a legal bona fide debt, was erroneously deducted by the auditor from the amount of claims and demands due the company.
For error in holding that, the auditor was not authorized by law to enter upon the duplicate for taxation, the average amount of cash and cash items in possession returned by the defendant for taxation, without deduction therefrom, the judgments of the circuit court and of the court of common pleas should be reversed, and the cause remanded to the court of common pleas for the rendition of judgment against the defendant for taxes, at the proper rate, for the year 1885, on such average amount of cash and cash items in possession, without any penalty thereon.

Judgment accordingly.

Williams, J., not sitting in the case.