# JAMES H. NOWELL

## *vs.*

# EMERSON C. HARRINGTON, Comptroller of the State of Maryland.

*Acts of Assembly : approval by the Governor; qualified approval
for amount other than that named
in bill.*

Under section 17 of Article 2 of the Constitution, no bill
can become a law without the Governor's signature, if pre-
sented to him after the adjournment.                    p. 488

Where the Governor, in approving a bill appropriating
money, notes that he approves it for a definite and less sum
than the sum named, and disapproves it as to the balance, it is
not an approval of the bill as passed by the Legislature.   p. 491

After the adjournment of the Legislature a bill, appropri-
ating $175.00, to be paid to a party named therein, was pre-
sented to the Governor, who approved the bill as to $125.00 and
disapproved the bill as to $50.00; the party named in the bill
was paid the $125.00, and filed a petition for a mandamus to
compel the Comptroller to pay him the $50.00; on appeal from
an order sustaining a demurrer to the bill, it was: *Held,* that
the demurrer was properly sustained.                    p. 492

*Decided January 15th, 1914.*

Appeal from the Circuit Court for Anne Arundel County.
(BRASHEARS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE,
THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*James W. Owens* (with whom was *Eugene P. Childs* on
the brief), for the appellant.

*Edgar Allan Poe,* the *Attorney-General,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order dismissing the amended petition of the appellant for a mandamus against the appellee. The petition sets out Chapter 630 of the Acts of Assembly of 1912, the first section of which is as follows:

> "*Be it enacted by the General Assembly of Maryland,* That the Treasurer of this State be and he is hereby authorized and directed, upon the warrant of the Comptroller, to pay to James H. Nowell the sum of one hundred and seventy-five .($175.00) dollars for injuries done to the local guard boat, the sloop 'Maria,' while on duty in the waters of Herring Bay, said boat having been damaged by ice while guarding the waters of said Herring Bay."

It then states:

> "That the Governor of Maryland, in approving the bill, endorsed on it as follows: 'This Act is approved for the sum of one hundred and twenty-five dollars ($125.00), and is disapproved for the amount or sum of fifty dollars ($50.00)'."

and alleges that section 17 of Article 2 of the Constitution does not authorize the Governor to approve part and disapprove the rest of an item of an appropriation, but that he is only authorized under that section to approve or disapprove the entire item under consideration. But while thàt may be an interesting question, it was not passed on by the lower Court, and it is not necessary for us to do so.

It is admitted that the bill was not presented to the Governor until after the legislature adjourned, and no bill can become a law without the Governor's approval, if submitted to him after such adjournment. Section 17 of Article 2 of the Constitution. *Lankford* v. *County Commrs.,* 73 Md. 111. If, then, the Governor did not actually approve the bill as passed by the legislature, it is manifest that such bill never became a law, and hence no appropriation was made by it for the sum of $175. Yet the appellant is in Court admitting that he had received the $125.00 and asking that the Comptroller "may be required to pay to your petitioner the

additional sum of fifty dollars appropriated by said Act of
the General Assembly." A sufficient answer to the petition
might have been that the Comptroller has no power to pay
any of the sum, as the bill required the Treasurer to pay it
on the warrant of the Comptroller, which is the course usu-
ally pursued, but regardless of that, section 17 of Article 19
of Code of 1912 provides that, "Every warrant drawn by the
Comptroller on the Treasurer for the disbursement of money,
to be valid, shall express upon its face the purpose for which
it is drawn, and the Act of the General Assembly by which
the appropriation is made," and section 32 of Article 3 of
the Constitution provides that, "No money shall be drawn
from the Treasury of the State by any order or resolution,
nor except in accordance with an appropriation by law; and
every such law shall distinctly specify the sum appropriated
and the object to which it shall be applied."

It was said in *Warfield* v. *Vandiver,* 101 Md. 113, that,
"There are three ways in which a bill may become a law—
first, by being signed by the Governor; secondly, by being
passed over his veto; and thirdly, by his failure to return the
bill within six days after receiving it, unless by adjournment
the General Assembly prevents its return." Section 17 of
Article 2 of the Constitution is then quoted. Of course the
Court was then speaking of bills which had been duly passed
by the legislature. This bill did not become a law by being
passed over the veto of the Governor, or by his failure to
return it within six days (Sunday excepted), after receiving
it, for, as we have seen, it was admittedly not received by him
until after the adjournment of the legislature. The only
remaining way by which it could have become a law was by
being signed by the Governor.

Was it, then, signed by him within the meaning of the
Constitution, so as to make it a valid appropriation for
the amount named in it? Below the copy of the Act filed
with the petition as shown in the printed record is the fol-
lowing:

A reduced *fac simile* of the official indorsements upon the
bill is given on the next page.

The above is a reduced *fac simile* of the official endorsements, approving Chapter 630 of the Acts of 1912, with the Governor's qualification of his approval.

There is no charge in the petition that what we have quoted was not all placed on the bill at the same time, but on the contrary it is therein alleged "That the Governor of Maryland in approving the bill endorsed on it as follows," etc. It would seem clear therefore that the Governor did not intend to give his approval of the bill for the whole amount allowed by the legislature, and hence never did approve it as passed by the legislature. In *Allegany County* v. *Warfield,* 100 Md. 516, the Governor signed a bill, which had been passed by the legislature, in the presence of the officers of the Senate and House of Delegates, but immediately thereafter erased his name from the bill because he discovered that he was under a misapprehension as to what the bill signed was, and he had never mentally approved it. It was held that the bill so signed was not approved by the Governor within the meaning of the Constitution and did not become a law.

In that case it was held that testimony of the Governor "that he signed the bill which is the subject of this proceeding by inadvertence and under a misapprehension as to what the paper being signed was, and without ever having gone through the mental operation of approving said bill, and that that *he immediately* thereafter erased his name from the bill" was admissible. JUDGE FOWLER, in speaking for the Court, said: "Of course there may be cases where a bill has been approved by mistake or misapprehension, and the point of time beyond which such mistake may be corrected *by the Governor has passed.* But this, as we have seen, is not such a case. It is conceded here by the plaintiffs under their contention in the first exception, that the Governor erased his signature *immediately* after writing it, and under the second exception that the signature was erased before the bill left the executive chamber." Whether or not that bill had passed beyond the Governor's control or out of his custody after he signed it was then considered, and it was held that it had not by being in the hands of the Secretary of State, the

Court saying: "Neither the Constitution nor the law provides for or contemplates any possession of a bill after it is signed by the Governor other than his, until he causes it to be sent to the Clerk of the Court of Appeals for record, as provided by section 30, Article 3 of the Constitution. We, therefore, have no difficulty whatever under the facts of this case in holding, that the Governor never did approve the *bill* as contemplated by the Constitution, and that the placing of his signature to the bill was absolutely null and void, in so far as it affords any evidence of his approval thereof."

Under that decision and from what appears in this petition we can have no hesitation in affirming the order of the lower Court which sustained a demurrer to the petition and, the petitioner having declined to amend it or plead further, dismissed the petition. It might perhaps have been better to have had the memorandum as to the approval of part and disapproval of the rest before the signatures of the Governor and the officers of the Senate and House of Delegates, but in the absence of something which would show that the bill was first signed at a point of time which was beyond the power of the Governor to correct or recall, there can be no doubt that the Governor did not intend to approve the bill as passed, as the memorandum signed by him and the other officers clearly shows. The fact that the President of the Senate and the Speaker of the House also signed the memorandum, does not lessen the effect of the Governor's disapproval of a part, but on the contrary tends to show that it was all done at the same time.

Although in view of what we held in *Allegany Co.* v. *Warfield, supra,* it is not necessary to cite authorities outside of our own, in the case of *State* v. *Holder,* 76 Miss. 182, one of the cases cited by the appellant, it was said: "The bill in question is an entire thing, inseparable in its provisions, and to be approved or disapproved as such, and, not being signed as a whole, was not made law by the partial and qualified approval which it received. It can not be law, for that would be to make law of what has not been concurred in by the

legislature and the Governor  * * *  To hold that the bill
became law as a whole would be to make it so without the
Governor's approval, and in the face of his disapproval of
the conditions.   Both legislative declaration and executive
approval are essential prerequisites to the enactment of any
law."   In that case the Governor approved part of a bill
making appropriations, and disapproved parts which placed
limitations on the use of the money appropriated.

If, then, the appellant be correct in his main contention,
that the Governor could not approve a part and disapprove a
part of this item, about which we express no opinion, the
result would be that the appellant was not entitled to any of
the sum, and not that he could require payment of the resi-
due.   Inasmuch as he has received what the Governor was
willing and intended to approve, he is certainly not in a
position to complain, and the order of the lower Court will be
affirmed.

*Order affirmed, the appellant to pay the costs.*