FRANK C. ROBEY, CLERK, ET AL. *v.* WILLIAM J. BROERSMA, ET. AL.

[No. 41, April Term, 1942—On Reargument, No. 35, October Term, 1942.]

326

*Decided June 17, 1942. Modified on Reargument January 12, 1943.*

The cause was argued before BOND, C. J., DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Hall Hammond, Deputy Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the appellants.

*Hilary W. Gans* for the appellees.

FORSYTHE, J., delivered the opinion of the Court.

The General Assembly of Maryland, at the session of 1941, passed an Act (Chapter 209) to add a new section, to be known as Section 73A, to the License Article, 56 of the Maryland Code of Public General Laws, 1939 Edition. The material provisions of the Act with which we now are concerned are:

"73A. Each person, firm or corporation selling or offering for sale through coin-operated vending machines any articles or goods or merchandise, except cigarettes, for the sale of which a traders' license is required, shall first obtain a license therefor and shall pay an annual license fee for such vending machines as follows:

"For each machine charging from 2¢ to 5¢ for merchandise ................................$1.00

"For each machine charging more than 5¢ for merchandise ................................$2.00

"Where the same machine vends more than one type or brand of article, the basis for the fee shall be determined by adding the number of cents required to purchase each type or brand of article sold. The clerk issuing the license shall supply the licensee with a metal tag or stamp to be applied to such vending machines in accordance with regulations of the State Comptroller. All licenses shall expire on the 30th day of April each year."

The General Assembly declared it to be an emergency Act, to take effect on May 1, 1941.

The appellees are merchants using automatic coin machines to distribute to customers nuts and various flavors of candy bars and chewing gum. They filed a bill of complaint in the Circuit Court of Baltimore City seeking to enjoin the appellants, who are the Clerk of the Court of Common Pleas, the State Comptroller and the Chief Inspector of State Licenses, from enforcing the provisions of the Act, which is designated as Chapter 209 of the Acts of 1941.

In their bill, the appellees assert that the said Act is invalid for several reasons. First, it is charged that the Act creates illegal discrimination between "traders" selling similar merchandise by imposing license fees based upon the method of selling, which is arbitrary and unreasonable, and therefore is in violation of Section 1 of the Fourteenth Amendment to the Federal Constitution; and also in conflict with Article XV of the Maryland Bill of Rights. Second, that the Acts creates illegal discrimination between merchants using coin vending machines by imposing different requirements on machines which carry one type of merchandise, but of different brands, or more than one type of the same brand; and because the Act exempts from the license fee certain types of machines. The third objection to the Act is

that it is invalid because it was not impressed with the Great Seal of Maryland, and presented to the Governor for his approval within the time required by law.

A demurrer to the bill of complaint was filed, which was overruled. Answer, and a stipulation of facts, were filed, and the cause submitted upon the bill, answer and stipulation of facts. A decree was passed granting the relief sought, and declaring the Act not legislative discrimination in violation of the Federal Amendment, or of the Maryland Declaration of Rights; but void because it was not signed by the Governor before the time named in the Act for it to go into effect on May 1, 1941. From that decree this appeal was taken.

In considering the appellees' first charge, that of discrimination, it must be observed that what the Act actually does, is to classify automatic vending machines and place them in three classes, or groups, for the purpose of exacting a license fee from all merchants using any of the machines placed in the second and third classes.

In the first class are placed all machines offering but one choice of article, and requiring 1 cent to operate. Machines in that class are exempt from a license fee. In the second class are placed all machines offering more than one choice of article, and requiring 2 to 5 cents to operate. A license fee of $1 for such machines is required. The third class is composed of all machines requiring more than 5 cents to operate, and a license fee of $2 is exacted. Thus, it will be seen that, as the machines are classified, the license fee depends entirely upon the choice of machine each merchant elects to use.

In order to support the charge that legislative classification is illegal discrimination, it must appear that the classification is arbitrary, or capricious, otherwise courts will not interfere, because that is a matter of legislative discretion. Every presumption must be made in support of the theory that the legislative body has properly and validly exercised its powers. *Brown v. State,* 177 Md. 321, 330, 9 A. 2d 209, and cases therein cited.

By this Act, the classification, and the license fee, is imposed uniformly upon all merchants according to the type of machines each elects to use. There is no discrimination between machines of the same class. That system of fixing license fees has been held not to violate the Fourteenth Federal Amendment or the Fifteenth Article of the Maryland Bill of Rights. *Brown v. State, supra; Read Drug and Chemical Co. v. Claypoole*, 165 Md. 250, 166 A. 742; *State Board v. Jackson*, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 *A. L. R.* 1464, 75 *A. L. R.* 1536; *Magnano Co. v. Hamilton*, 292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109; *Carmichael v. Southern Coal and Coke Co.*, 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 *A. L. R.* 1327. In the Jackson case, *supra* [283 U. S. 527, 75 L. Ed. 1248], it was held: "The power of taxation is fundamental to the very existence of the government of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings or occupations. * * * The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction. * * * As was said in *Brown-Forman Co. v. Kentucky, supra,* at page 573 (217 U. S. 563, 573, 30 S. Ct. 578, 580, 54 L. Ed. 883) : "A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law. It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the

public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."

The principles which governed the decisions in the above cases have been fully accepted by this court. In *State v. Shapiro*, 131 Md. 168, 171, 101 A. 703, 704, *Ann. Cas.* 1918E, 196, this court stated that: "The Legislature is under no constitutional obligation, either Federal or State, to observe a definite rule of uniformity in the enactment of its license laws. It is not required to establish the same license system and regulations for all the interests and political divisions over which its authority extends. It has the right to make separate and different provisions for distinct classes and areas. The exercise of such power does not conflict with the constitutional right to the equal protection of the laws, or to due process of law, if the prescribed regulations operate equally and uniformly upon the class and within the area affected, and their limitations are not clearly unreasonable." *Magoun v. Illinois Trust & Sav. Bank,* 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037; *Budd v. New York,* 143 U. S. 517, 12 S. Ct. 468, 36 L. Ed. 247; *Barbier v. Connolly,* 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923; *Holden v. Hardy,* 169 U. S. 366, 395, 18 S. Ct. 383, 42 L. Ed. 780; *State of Missouri v. Lewis,* 101 U. S. 22, 25 L. Ed. 989; *Field v. Barber Asphalt Co.,* 194 U. S. 618, 24 S. Ct. 784, 48 L. Ed. 1142; *Duncan v. Missouri,* 152 U. S. 377, 14 S. Ct. 570, 38 L. Ed. 485; *American Coal Co. v. Allegany Co.,* 128 Md. 564, 98 A. 143; *Mt. Vernon, etc., Co. v. Frankfort, etc., Co.,* 111 Md. 561, 75 A. 105, 134 *Am. St. Rep.* 636; *Criswell v. State,* 126 Md. 103, 94 A. 549; *Sweeten v. State,* 122 Md. 634, 90 A. 180; *Ruggles v. State,* 120 Md. 553, 561, 87 A. 1080; *Jones v. Gordy,* 169 Md. 173, 180 A. 272.

The principles so well established by the above authorities apply directly to this case. There is a definite difference between machines placed in the first class

and machines in the second class, and a different between machines in the second and third classes. That difference is sufficient upon which to base a different license fee. Some produce a far greater return on the investment of the merchant than do others. In the exercise of its discretion in matters of classifying, and of fixing license fees, the Legislature has the power to recognize differences in the amount of business a machine, or method, will produce, and fix license fees accordingly. The fact, as argued, that a merchant may escape the payment of a license fee on machines placed in the second or third class by using a great number of machines of the first and exempted class, each with a different choice of article, and thereby accomplish the same result of selling a variety of articles, without paying any license fee, does not make a discrimination between those using machines of the same class. If such an arrangement of machines can, under the Act, be used, that fact does not affect the validity of the Act. It goes only to its effectiveness and is a matter of legislative policy with which we are not concerned. Nor does the fact that an Act may not accomplish its purpose determine its validity, either under the Fourteenth Federal Amendment or under the Fifteenth Article of the Maryland Bill of Rights.

The facts and circumstances surrounding the passage and the signing of this Act by the Governor are fully set out in the stipulation of facts filed in the case. Therein, it appears, that this Act originated in a Senate Bill, and was passed by the Senate on February 5, 1941. It was later passed by the House of Delegates on March 17, 1941. The Act, then in final printed form, but without the Great Seal, was turned over to the Governor on March 19, 1941, for his examination. In that form, without the Great Seal, it was not ready for the Governor's signature. But on May 26, 1941, the Great Seal was attached to the Act, and it was officially presented to the Governor. On the same day he signed it.

It further appears from the stipulation of facts that during the period between the unofficial presentation of the Act to the Governor on March 19, and the official presentation on May 26, the Governor was considering the Act, and on April 24 gave a hearing to those persons interested in it. It was the first Act on which a hearing was given. It appears that the Governor devoted a great deal of his time, and energy, in his efforts to determine the propriety of signing the Act. He ascertained that it had the the approval of the Legislative Council, and of the Tax Revision Commission. Also, he had information about it compiled by the State Comptroller. There were many briefs and recommendations for, and against, the Act to be considered. During that period of time the Governor was required to give careful and detailed consideration to hundreds of other Acts, many of which required hearings, and the reading of innumerable communications.

By reason of the custom of the General Assembly to defer passage of hundreds of important bills until the very last hours of its session, it is inconceivable that any greater burden can be cast upon the Governor than to be forced to consider so many Acts in the short period of time between the adjournment of the Assembly, usually in the first week of April, and June 1, when all laws, except emergency laws, must become effective.

However, the validity of this Act does not depend upon the length of time afforded the Governor for its consideration, but it must be determined by settled rules of law.

Since this court has recognized the fact that the public welfare demands that the Governor be given ample opportunity, after adjournment of the Assembly, for the consideration of Acts, and has held valid Acts signed after adjournment of the Assembly [*Lankford v. Somerset County Comrs.*, 73 Md. 105, 20 A. 1017, 22 A. 412, 11 *L. R. A.* 491], that question will not further be discussed. Nor is there any necessity in this case to discuss the question of when an Act is officially presented to the Governor for his signature; or whether the con-

stitutional limit of time within which an Act must be signed after official presentation has expired. Those questions are not raised in this case. The only question presented by this objection to the Act is whether an Act, signed after the date fixed for it to take effect, is valid. That exact question never has been decided by this court, and very few cases elsewhere have decided the exact question. A number of decisions of other jurisdictions have been cited, but in none of them does it appear that the facts are identical with those in this case.

The Constitution, Art. 16, Sec. 2, expressly confers the power upon the General Assembly to designate in an Act the date it shall take effect. *Strange v. Levy,* 134 Md. 645, 107 A. 549; *Bevard v. Baughman,* 167 Md. 55, 71, 173 A. 40. It was in pursuance of that power that the General Assembly expressly fixed the date of May 1, 1941, for this Act to become effective.

In support of their contention that an Act may be held valid, even though it was not signed by the Executive until after its effective date, the appellants cite, and strongly rely upon, the cases of *Board of Education v. Morgan,* 316 Ill. 143, 147 N. E. 34; *McLaughlin v. City of Newark,* 57 N. J. L. 298, 30 A. 543, and *Lemaire v. Crockett,* 116 Me. 263, 101 A. 302. Other cases were cited, but those mentioned gave the appellants the strongest support. However, none of those cases present the exact situation as appears in the case before us. In the Morgan case the Act provided it should become effective when signed by the Governor. The Governor did not sign it until after July 1, on which day the Constitution of Illinois required all Acts to go into effect. The legislative body of Illinois had not designated a special (emergency) date prior to that time. The Supreme Court of Illinois held the Act could not be enforced until July 1 of the following year. To somewhat the same effect are the decisions in *People v. Kramer,* 328 Ill. 512, 160 N. E. 60, and *People v. Oak Park,* 372 Ill. 488, 24 N. E. 2d 571. But the point on which those cases, as

well as the McLaughlin and Lemaire cases, rested was that an Act specifying that it take effect when signed by the Governor, would be valid if signed after the constitutional period for Acts to take effect, a year later. The question was not, as in this case, whether it would be valid when signed after an emergency date expressly named in the Act. Other cases cited seemed to turn on the intention of the legislative body, as the court was able to determine that intention from the respective Acts under consideration.

It was urged in brief, and argument, in this case, that the effective date of an Act is not a part of the Act, but even if it be considered a part, if for any reason it be invalid, or inoperative, it is separable, leaving the remainder of the Act valid and operative. Citing *Wheelon v. South Dakota Land Settlement Board,* 43 S. D. 551, 181 N. W. 359, 14 *A. L. R.* 1145, 1147, and 59 *C. J.* 1147. But those authorities state only that when an Act states it is to go into effect immediately, it means it is to go into effect when signed by the Governor. The Maryland case cited, *Ulman v. State,* 137 Md. 642, 645, 113 A. 124, 126, held that, "the validity of one part of a statute upon the validity of another part, relates to conditions as they exist at the time of the passage of the statute, and not to those brought about by subsequent events." In that case the court was dealing with the effect of the Eighteenth Amendment on a license Act of Baltimore City.

In *Painter v. Mattfeldt,* 119 Md. 466, 474, 87 A. 413; *Somerset County Comrs. v. Pocomoke Bridge Co.,* 109 Md. 1, 71 A. 462, 16 *Ann. Cas.* 874, and *State v. Baltimore County Commissioners,* 29 Md. 516, it was held that valid parts of a statute may be enforced although other parts may be invalid. But in none of those cases was the exact point here raised considered. The court was not considering the validity of an Act signed by the Governor after the time specifically fixed by the Assembly for it to become effective.

Another point raised is that the provision for the Act to go into effect on May 1, 1941, may be disregarded, and it may be in force as of June 1, 1941, or perhaps May 1, 1942. Again the Lemaire case, *supra,* and *State v. Board of Sup'rs,* 64 Miss. 358, 1 So. 501, were relied upon. But the Acts under consideration in those cases, as before stated, provided they should become effective when signed, and the intent of the legislative body is in existence only from that time. That definitely was not the intent in the case now before us. Here, a specific date was fixed, which did not relate to the time the Act was signed, but clearly to the beginning of the license year, with the intent that it should be signed before that date. The Assembly had a particular and logical reason for declaring the Act should become operative on the first day of the license year. *Read Drug and Chemical Co. v. Claypoole, supra.*

When the legislative body expressly declares that an Act shall take effect on a certain and reasonable date, the presumption is that it intended it to take effect on that particular date, and on no other. In this case it cannot properly be said that it was the intention of the Assembly that operation of the Act, for any reason, should be postponed for a full year, or for one month after the beginning of the license year. That would be the result if either contention of the appellants be accepted, and the rule as stated in the McLaughlin, Lemaire and Morgan cases, *supra,* be applied in this case. That rule must not be applied in this case, because it would defeat the clear intention of the General Assembly, and that, courts, merely for the purpose of correcting some legislative defect, must not do.

Another reason for withholding approval of this Act, is that the Executive has no constitutional power to substitute, by any means, a different date for an Act to take effect, other than that specified by the Assembly. *State v. Roney,* 82 Ohio St. 376, 92 N. E. 486, 487, 19 *Ann. Cas.* 918; 59 *C. J.,* p. 1138, note p. 1140; 25 *R. C. L.,* p. 891, Sec. 142. Any attempt to do so would be a clear

violation of Article Eight of the Maryland Declaration
of Rights, "that the Legislative, Executive and Judicial
powers of government ought to be forever separate and
distinct from each other; and no person exercising the
functions of one of said departments shall assume or dis-
charge the duties of any other." *Parkinson v. State,* 14
Md. 184, 200, 74 *Am. Dec.* 522; *Strange v. Levy,* 134
Md. 645, 648, 107 A. 549.

In this instance there is nothing to indicate, in the
slightest degree, that such was the intention on the part
of the Governor.

The proper view of the controversy in this case is
correctly stated by the learned judge below, in his opinion
on the demurrer. He said:

"If, as the Attorney General now contends, the Gov-
ernor's approval of this bill is valid, though affixed
twenty-six days after the Legislature declared it should
go into effect, then it must be granted that the Governor
has power to defeat *pro tanto* the clearly expressed legis-
lative intent; to assume a *quasi* legislative function, and
in effect to inject an alien, material and unwanted amend-
ment between the covers of the Act, to wit: the Gov-
ernor's date, May 26th, supersedes and stands in lieu
of the legislative choice of May 1st. If the Governor
has such powers the Act as it now stands is an hybrid;
is in part a legislative and in part an executive product;
represents a compromise between the legislative and
executive wills, instead of a clean-cut agreement or dis-
agreement.

"It is impossible for the court to agree that such can
be the law. For how can it be said in the case of this
bill (not an appropriation bill embracing distinct items),
that it is within the constitutional power of the Governor
by any means at all, for any reason at all, to kill or alter
in effect one provision of the bill while approving the
balance; since the bill must be dealt with as a whole by
veto or approval?

"To repeat, the Governor's approval on May 26th has
the same effect (which ought to be the measure of the

goods), as an amendment adopted in the Legislature to strike out the word 'first' and insert in lieu thereof the words 'twenty-six.' How can the court hold under such a state of facts that a trespass upon the legislative field has not occurred, that Article 8 of the Declaration of Rights has not been violated?"

Therefore, we hold that the Act of 1941, Chapter 209, of the General Assembly of Maryland is not invalid as discriminatory legislation, but that it is invalid because it was not signed by the Governor prior to May 1, 1941.

On Reargument, MARBURY, J., delivered the opinion of the Court:

The bill in this case was filed by operators of automatic vending machines to prevent prosecution for failure to obtain licenses required by Chapter 209 of the Acts of Assembly of 1941. It was contended that this Act was void for two reasons:

(1) It created arbitrary and illegal discriminations.

(2) It was never properly signed by the Governor.

The court below held the Act void for the second reason only and ordered an injunction to issue. From this decree the case came here on appeal. It was first heard in the April term, 1942. This court was unanimous in its view that the Act attacked was a valid exercise of legislative power, and not subject to successful attack on the first ground alleged. On the second question, the court was divided, the majority at that time holding that the Act had not been properly signed by the Executive. At the request of the appellants, a reargument was granted, and the case was heard again in the current term on the second question alone.

This question raises the point that the Act, made effective by its terms on May 1, 1941, was not signed until May 26, 1941, at which time, it is claimed, the Governor had no longer the power to affix his signature, and by so doing could not make it a valid law, effective from either May 1, 1941, or from May 26, 1941.

To put into effect a valid law, it is necessary in the first instance for the Legislature to pass the bill; to have it sealed with the Great Seal of the State; and to present it to the Governor. The duty of the Governor does not begin until it is so presented. *Hamilton v. State,* 61 Md. 14. After it has been presented to the Governor, there are three ways in which such a bill may become law: (1) by being signed by the Governor; (2) by being passed over his veto; (3) by his failure to return the bill within six days after its receipt by him unless the General Assembly has adjourned and thereby prevented its return. *Warfield v. Vandiver,* 101 Md. 78, 113, 60 A. 538; *Nowell v. Harrington,* 122 Md. 487, 89 A. 1098. In the case before us, the Legislature had adjourned before the bill was presented to the Governor, and, therefore, under the provisions of the Constitution, Art. II, Sec. 17, it could only become a law by the signature of the Governor.

In the years immediately following the approval of the Constitution of 1867, it was generally supposed that a bill could not be presented to the Governor after the Legislature had adjourned. The veto power was a new departure in this State, having been given to the Executive for the first time in 1867. The Proprietary had been given the power to initiate laws by the Charter. (Charter of Maryland, VII.) When the free-men of Maryland first met, they started to initiate laws themselves, and the Proprietary at once disapproved them and presented a body of laws of his own which the free-men just as promptly disapproved. The Proprietary receded from his position of standing on the wording of the Charter, and frequently exercised it. This veto power was the occasion of bitter controversies between the House of Burgesses and the Proprietary and the Governors of the province appointed by him. It was perhaps with these controversies in mind that the Convention of 1776 gave the Governor of the newly formed State no powers of veto. This situation continued for eighty-one years until the

present Constitution was adopted. It appears from the wording of the section adopted in 1867 giving the veto power, that the balance of power had shifted and the Legislative Department was more powerful than the executive or judicial. The veto power was to be a curb on it.

In discussing it, one of the members of the Convention said that the power was to be conferred to prevent the deferring of all legislation until the heel of the session, and that it would compel the Legislature to pass the laws and to present them to the Governor in time. *Perlman's Debates of Md. Constitutional Convention of 1867*, page 188. The view of this member that bills must be presented to the Governor before the adjournment of the Legislature was the view taken by the Supreme Court with respect to the veto provisions of the Federal Constitution. It has also been held by the courts in other States with respect to similar provisions of their Constitutions. It was the practice in this State, apparently, until 1880. *Dissenting Opinion of Judge Robinson in Lankford v. Somerset County*, 73 Md. 105, 127, 20 A. 1017, 22 A. 412.

In 1883 a case came to this court involving the necessity of sealing a bill with the Great Seal before its presentation to the Governor, and it was held that a presentation without the Seal was not good. *Hamilton v. State*, 61 Md. 14. At the next session of the Legislature, there was passed the Act which is now Section 42 of Article 41, Code, 1939. It provided the method of presentation and by whom it should be made. The pertinent part of that statute: "Every bill, when passed by the general assembly, shall be returned to the house in which the same originated, and shall, as soon thereafter as practicable, be sealed with the great seal by the secretary of the senate or chief clerk of the house of delegates, and presented to the governor for his approval."

In 1890 (Laws of 1890, Chap. 538) the Act providing for the Australian ballot was passed, and this highly

controversial measure was immediately attacked in the courts. The Legislature had adjourned on March 31, the bill presented to the Governor on April 4, and was signed by him on April 8. The immediate question was whether, under the Constitution and under the statute of 1884, a bill could be presented to the Governor after the Legislature had adjourned. The court divided on the question, but the majority held that it could, reciting that such practice had obtained since, as well as before, the passage of the Act of 1884. *Lankford v. Somerset County*, 73 Md. 105, 20 A. 1017, 22 A. 412. That decision has been approved by this court in a later case, *Johnson v. Luers*, 129 Md. 521, 99 A. 710, and after a lapse of more than fifty years, it cannot and should not now be disturbed, and the validity of thousands of laws brought into question.

The Act of 1884 was also before the court with respect to the question as to how soon an Act must be presented to the Governor, and the court said: "But these terms, 'as soon thereafter as practicable,' are of a relative and dependent character, to be controlled more or less by the circumstances of the case, and by no means furnish a definite and fixed rule." *Lankford v. Somerset County*, 73 Md. 105, 20 A. 1017, 1019, 22 A. 412. In the later case above quoted, not only was the decision of this question approved, but it was clearly indicated that "practicable" did not mean practicable for the officials of the Legislature, but practicable for the proper consideration by the Governor. *Johnson v. Luers*, 129 Md. 521, 99 A. 710. There is, therefore, no constitutional or statutory limit to the time, after passage, within which a bill must be presented to the Governor. It is a practical question, depending for its answer in each case on the circumstances of that particular case.

The Act having been duly passed, presented and signed, the next question is when it takes effect. The old English common law rule was that Acts of Parliament took effect on the first day of the session at which they were

passed. That rule was exceptionally harsh, produced great injustice, and permitted the passage of *ex post facto* laws under which a person could be tried for doing something which was not a crime when he did it. That rule was changed in England by the statute 33rd Geo. III, Chapter 13, passed in 1793, but, of course, that statute is not in force in this country as it was passed after the Revolution. The general American rule, however, has been that statutes take effect on the date of their passage unless otherwise restricted by some constitutional limitation. *Cooley on Constitutional Limitations*, 8th Ed., Vol. 1, page 326; *Parkinson v. State,* 14 Md. 184, 74 *Am. Dec.* 522; *Concurring Opinion of Judge Bryan, Lankford v. Somerset County,* 73 Md. 105, 122, 20 A. 1017, 22 A. 412. There is no provision in our Constitution which fixes the date on which an Act shall become effective. There are two provisions which prevents Acts from becoming effective until June 1 next after passage unless the Legislature provides otherwise. These are Section 31 of Article III and Section of Article XVI. The Act before us was passed in accordance with the latter Article and in the manner required to fix an effective date before June 1. This it was entirely competent for the Legislature to do.

When the Legislature passed the Act now known as Chapter 209 of the Acts of 1941, it must be presumed to have passed it in the knowledge that under the Constitution, under Article 41, Section 42 of the Code, and under the construing decisions, it need not be presented to the Governor prior to May 1, and that it might not be signed by him until after that date. Nevertheless, that date was inserted in the Act as its effective date. The purpose of this is clear. The Act was creating a species of trader's license which was to expire on the 30th of April in every year. It was an annual license and was made to conform to similar licenses covering the license year from May 1 to April 30. The insertion of the May 1 date is no indication that the Legislature intended the

Act to be void if it should not be signed before May 1. The Act was made a part of the License Article of the Code, Article 56, Section I of which provides that where licenses are issued later in the year than the 1st of May, a ratable sum shall be charged. The license provisions in Article 56 are to be construed together (*Spielman v. State*, 27 Md. 520, 525, 92 *Am. Dec.* 637; *Read Drug & Chemical Co. v. Claypoole*, 165 Md. 250, 255, 166 A. 742), and in case the Act became a law after the 1st of May or in a later month, there would be no difficulty in the issuing of licenses thereunder for the remainder of the year.

Had the Legislature intended that this and similar Acts must be signed before the dates fixed in them for going into effect, or otherwise be void, it had the remedy within its power. An amendment to Section 42 of Article 41 providing that every bill containing a specific date for going into effect should be presented to the Governor at least six days before such date would result in requiring the Governor to act on such bills in time for them to take effect when the Legislature desired. No such amendment has been made by the Legislature in the fifty-eight years during which the law has been on the statute books. It must be assumed that the Legislature did not intend there should be any difference in the time of presentation of Acts such as that before us, and of other Acts in which no date of effectiveness is stated. We cannot amend the law for the Legislature. We must find that the Act of 1941 was passed in the light of the possibility which did occur, and that the Legislature intended it to be effective on May 1 or as soon thereafter as it was approved. The contention that the Governor, in signing the Act on May 26, amended the statute, becomes clearly fallacious when it is considered that what he signed was exactly what the Legislature passed, and that the Legislature passed it with the knowledge that he might not be able to sign it by May 1.

Under all rules of construction, laws passed by the people through their representatives in legislative bodies

should be upheld unless they clearly violate some constitutional provision or some fixed rule of public policy. If there is any doubt about the question, if under one construction the Act can be upheld while under another it must be voided, the construction must be adopted which will preserve the Act as valid legislation. These principles of statutory construction are axiomatic and need no citation of authority.

There is a further rule growing out of the same principles, which holds that where a part of a statute may be clearly void and yet the remainder will carry out the legislative purpose, the unobjectionable part will be enforced. *Davis v. State,* 7 Md. 151, 61 *Am. Dec.* 331; *Hagerstown v. Dechert,* 32 Md. 369; *Painter v. Mattfeldt,* 119 Md. 466, 87 A. 413.

In a case which presents some similarities to the case before us, certain parties were indicted for selling intoxicating liquors without license. The time of the indictment was after the passage of the Eighteenth Amendment to the Federal Constitution and after the passage of the Federal Volstead Act (27 U. S. C. A., Sec. 1 et seq.). It was contended that inasmuch as no license could be gotten under the Federal law, the Maryland Act had become void because parties should not be indicted under one statute for not doing something which they were prohibited by other laws from doing. This court in upholding the indictment pointed out that there were some purposes for which intoxicating liquors could be sold under the Federal law, while the State law prohibited the sale for all purposes without a license. Then the court stated the rule with respect to change of conditions after the passage of an Act, and said that, in such case the question becomes "Not what the men who made the law would have done if they could have looked into the future, but whether the remaining part of the statute can be enforced without doing violence to the purpose of the whole Act; in other words, whether any part of the purpose of the Act can be subserved by the enforcement of

such part of the statute as has not been nullified. *Ulman v. State,* 137 Md. 642, 645, 113 A. 124, 126.

The purpose of the Act before us was to create a continuing annual license for selling through certain types of vending machines. This is shown by the clause in the Act which provides that all licenses shall expire on the 30th of April "each year." The Act could not take effect on May 1, 1941, because it was not signed at that time, but, as we have shown, a method is provided in the license article for issuing licenses at later periods. It would be an absurdity to say that, because possibly one month of the first license year could not be collected, then the whole Act must be stricken down and the purpose of the Legislature thwarted. That purpose was to provide an annual license, and that purpose can and should be carried out.

There is a graver ground upon which this Act must be upheld. That is the possible consequence of a decision that the Secretary of the Senate of the Chief Clerk of the House of Delegates can prevent the going into effect of an Act by withholding its presentation from the Governor until after the arrival of the date which the Legislature has fixed in the Act for its going into effect. In the present instance, the bill was not presented because the Governor desired to hear various protestants and to give careful consideration to the advisability of the proposed license. It was an entirely laudable reason and well within the circumstances rule approved by Chief Judge Boyd in *Johnson v. Luers,* supra. It is easy to imagine that bills might be withheld for reasons much less laudable, or even with corrupt purpose. Bills can also be mislaid. All of these are possibilities and the door should not be opened to their improper use. It is not contemplated by the Constitution or by the statute that any power should be given to the secretarial officials of the Legislature—a power which amounts to a practical veto of bills not presented before the fixed effective dates. It would be a dangerous innovation, and it should not now be introduced into our legislative system.

We therefore hold that the Act of 1941, Chapter 209, became effective on May 26, 1941, the date on which it was signed by the Governor, and that in consequence of such holding, the decree of the lower court must be reversed, and the bill dismissed.

On motion for reargument filed by the appellee, the court filed the following memorandum:

This motion for reargument filed by the appellee is based upon the failure of the court to pass upon the regulations of the Comptroller and the construction of the Act by the appellants, both of which are claimed by the amended bill of complaint to be improper. It does not appear from the record that these matters were considered by the court below, but the appellees are entitled to have them passed upon before the bill is dismissed. For these reasons, the motion for re-argument is overruled, but the order heretofore passed herein dismissing the bill of complaint will be amended and the case remanded for further consideration below.

> *Decree reversed, with costs. Case remanded for further · proceedings in accordance with the memorandum filed herein.*

FORSYTHE, J., took no part in the consideration or decision of this case on reargument.

COLLINS, J., and GRASON, J., dissent and adopt the opinion heretofore filed herein by FORSYTHE., J., in No. 41, April Term, 1942, as the reason for their dissent from the opinion filed by a majority in No. 35, October Term, 1942.