OPINION OF THE JUSTICES of the Supreme Court in Response to Questions Propounded by the Governor of Delaware.

(*June* 14, 1965)

Supreme Court of the State of Delaware. No. 45, 1965.

To His Excellency Charles L. Terry, Jr., Governor of Delaware.

Reference is made to your letter of May 24, 1965, addressed to the Chief Justice, requesting the opinion of the members of the Supreme Court upon the constitutional enactment of House Substitute No. 1 for House Bill No. 67, as amended, (published as 54 Laws, Ch. 402) of the 122nd General Assembly.

The precise questions upon which you have requested our opinion read as follows:

"(1) Have Sections 1 through 13 of House Substitute No. 1 for House Bill No. 67 as amended by House Amendments No. 2, 4 and 5 (known as Chapter 402, Volume 54, Laws of Delaware) been approved in accordance with the Constitution of the State of Delaware?

"(2) If the answer to question No. 1 should be "Yes", what is the constitutional status of the Section 14 which was line item vetoed?"

The bill in question as passed by both Houses of the 122nd General Assembly and submitted to the Governor, your predecessor in office, contained 14 sections. The first 13 sections established a means to provide State financial support to School Districts in order to equalize salaries paid teachers. The 14th section established a means to provide State financial support for the amortization of School Construction Bonds issued by Districts so as to equalize the ability to pay among the so-called rich and poor Districts. At least, we assume that to have been the intent of Section 14.

The bill in question finally passed both Houses of the General Assembly on October 12, 1964, and was delivered to the Governor pursuant to Article 3, Section 18 of the Constitution Del. C.

Ann. on October 29, 1964. The 122nd General Assembly was dissolved by reason of expiration of terms of office on November 3, 1964. This was the equivalent of adjournment of the General Assembly *sine die,* or final adjournment. Opinion of the Justices, Del., 175 A. 2d 543.

On December 2, 1964 the Governor attempted to approve Sections 1 through 13 of the bill by affixing his signature to the bill, but at the same time attempted to line item veto Section 14. It appears that the Governor expressed his disapproval of Section 14 as positively and unequivocally as he could, attempting at the same time to salvage the remainder of the bill. In acting on the bill he drew a line through each line of Section 14 and wrote in the margins "Line item vetoed," with the date and his initials. On the signature page of the bill, the Governor wrote after the word "Approved" the words "Except for the line item veto of Sec. 14."

The Governor also publicly announced his reasons for his disapproval of Section 14, noting, nevertheless, his intent and effort to preserve the "equalization principle" of the bill. From accounts in the public press, it appears that the Governor stated his reasons for disapproving Section 14 to be that the State would be obligated thereunder to match debt service costs for construction programs contrary to the recommendations of the State Board of Education; that the cost to the State of implementing Section 14 could not then be estimated; that application of that section presented "insurmountable computational problems;" and that the section erroneously disqualified five School Districts.

It thus appears that the Governor was unwilling to approve or disapprove the bill *in toto.* He attempted to remove the objectionable and to save the acceptable.

Article 3, Section 18 of the Constitution provides that after final adjournment of the General Assembly no bill shall become law "unless approved by the Governor within thirty days after such adjournment." We note that the final adjournment of the 122nd General Assembly having taken place on November 3, 1964, the action taken by the

Governor, whatever its effect, took place within the prescribed 30-day period following final adjournment.

The members of the Court make the following answer to your question No. 1.

The answer to your question depends upon the meaning of certain portions of Article 3, Section 18. Specifically, the language of that section governing the question is as follows:

"No bill shall become a law after the final adjournment of the General Assembly, unless approved by the Governor within thirty days after such adjournment. The Governor shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be the law, * * *."

Presumably, section 14 of the bill was disapproved by the Governor on the theory that the bill was one appropriating money and, thus, subject to the power of the Governor to disapprove distinct items of such a bill. This must have been the theory of the partial veto of the bill since only with respect to bills appropriating money is the Governor given such power.

We are of the opinion that the bill is not one "making appropriations of money" within the meaning of Article 3, Section 18. The bill provides only a procedure for formulating recommendations to the General Assembly of an amount of money to be later appropriated by the General Assembly for the purpose of equalizing costs among the several School Districts. This being so, the Governor was not empowered under the Constitution to disapprove a part of the bill and approve the balance. It follows that the attempted veto of Section 14 was ineffectual. Since the attempted veto of Section 14 was of no force and effect the bill as an entirety either must be deemed approved by the Governor, in which event it is the law, or as an entirety it must be deemed to have failed of approval by the Governor, in which event it is not the law.

■ We are of the opinion that since the bill as an entirety has failed to receive the approval of the Governor, it failed of enactment. Article 3, Section 18 of the Constitution, with the exception of bills appropriating money, requires the Governor to approve or not approve an entire bill submitted to him.

■ Furthermore, fundamental constitutional consideration requires that this be so. The legislative process for the enactment of law established by our Constitution contemplates the formulating of proposed laws by the Houses of the General Assembly, and the submission of a proposed law to the Governor for his approval or disapproval. In effect, the Governor and the Houses of the General Assembly are a legislative team, but each has separate and distinct functions in the enactment of laws. It is the function of the Senate and House to agree upon the form and substance of a law, and, generally speaking, it is the function of the Governor to act as a check upon the final enactment of that law. In doing so, he must approve or disapprove it as a whole for he has no constitutional power to alter the content of a proposed law submitted to him, except as to appropriations of money.

Thus it is, we think, that an attempted partial veto of a non-appropriation bill by the Governor makes nugatory his attempted approval of the balance of the bill. To conclude otherwise would permit the Governor to cause a law to be enacted in which the Senate and House have not concurred. At the same time, to conclude that since the veto of the portion is a nullity the Governor's approval of the balance must be held to include the portion rejected by the abortive veto would be to ascribe to the Governor an approval he has demonstrated he did not have.

We think it clear that the Governor's act did not constitute an approval of the entire bill. It therefore follows that House Substitute for House Bill No. 67, having failed to have been approved by the Governor within 30 days of the final adjournment of the 122nd General Assembly, has not become a law.

While there is authority to the contrary, we note that other States with similar constitutional provisions in somewhat related situations have reached the same conclusion. See *Nowell v. Harrington,* 122 Md. 487, 89 A. 1098; *State v. Holder,* 76 Miss. 158, 23 So. 643; *Regents of State University v. Trapp,* 28 Okl. 83, 113 P. 910; *Mills v. Porter,* 69 Mont. 325, 222 P. 428, 35 A.L.R. 592.

Since we have answered question No. 1 in the negative, we need not consider question No. 2 which becomes pertinent only if the answer to question No. 1 is in the affirmative.

Respectfully submitted,

DANIEL F. WOLCOTT
Chief Justice
JAMES B. CAREY
DANIEL L. HERRMANN
Justices