**Bradford PERRY, Sr., Plaintiff,**

**v.**

**Henry James DECKER, Secretary of Public Safety of the State of Delaware, and Robert J. Voshell, Director of the Division of Motor Vehicles of the State of Delaware, Defendants.**

**STATE of Delaware,**

**v.**

**Robert E. BARBEN, Defendant.**

Supreme Court of Delaware.

Submitted Jan. 19, 1983.

Decided Feb. 3, 1983.

James T. Vaughn, Jr. (argued), Vaughn & Vaughn, Dover, Harold Schmittinger and Charles E. Whitehurst, Jr., Schmittinger & Rodriguez, P.A., Dover, for plaintiff Perry.

Arlen Mekler (argued), Wilmington, for defendant Barben.

Roger A. Brown (argued) and James J. Hanley, Deputy Attys. Gen., Wilmington, for State.

Before HERRMANN, C.J., McNEILLY and HORSEY, JJ.

HERRMANN, Chief Justice:

Two related Certifications of questions of law are involved here: (1) A Certification by the Court of Chancery in *Perry v. Decker, et al.* (hereinafter "Perry"); and (2) a

Certification by the Superior Court in *State v. Barben* (hereinafter "Barben"). Both were accepted by this Court on the grounds that the questions of law are of first instance in this State and that there are urgent reasons to have them settled by this Court as soon as practicable.

The basic issue in both Certifications is the legal status of House Bill No. 780 (amending 21 *Del.C.* Chs. 27 and 41), passed by the General Assembly on July 1, 1982, instituting new procedures and penalties governing the offense of operating a motor vehicle under the influence of alcohol or other drugs.

## I.

*The Perry Case*

This is an action to enjoin the State Secretary of Public Safety and the State Director of the Division of Motor Vehicles from conducting a driver's license revocation hearing under H.B. 780.

The following pertinent facts are undisputed:

On July 1, 1982, the General Assembly passed H.B. 780. The Bill contained an appropriation of $135,000 "for the purpose of implementing the provisions of this Act." The Bill was presented to the Governor on July 9, 1982. On July 21, 1982, the Governor acted upon the Bill by approving and signing it, but purported to reduce the appropriation to $20,000 "by line item veto" and return of the Bill to the House of Representatives with the following message:

"I have today approved this Act. Pursuant to the authority conferred in Article III, Section 18 of the Delaware Constitution, however, I have reduced the appropriation in Section 21 of the bill by line item veto.

"Section 21 appropriates $135,000 to the Division of Motor Vehicles for the purpose of implementing the Act. Because this appropriation is separate from, and independent of, the 1983 Fiscal Year Budget Act, it will result in expenditures above the 98% limit in violation of Article VIII of the Delaware Constitution. Thus, absent the required declaration of emergency and three-fifths vote, the appropriation is unconstitutional.

"I am advised that the Budget Act and the Grants-In-Aid Act for 1983 appropriate all except $20,000 of the 98% of general fund revenues officially estimated for Fiscal Year 1983. Therefore, in order to keep the appropriation authorized in this Act within constitutional limits, and to enable the Division of Motor Vehicles to undertake at least preliminary steps toward implementation, I have reduced the appropriation to $20,000.

"I urge the next General Assembly to act early in its First Session to authorize a constitutionally permissible appropriation and I stand ready to assist in that effort.

"Because the General Assembly may, if it should so elect, exercise its authority to override the Executive Veto, I return House Bill No. 780 as amended by House Amendment No. 2 as approved except as partially disapproved by distinct line item. Nevertheless, in accordance with Article III, Section 18 of the Delaware Constitution, all of the bill which stands approved, in whole or in part, is now law."

The Bill now rests in the House of Representatives as returned by the Governor, without any further action thereon.

The Act provided that it became effective 90 days after enactment. In accordance therewith, the Department of Public Safety began enforcing the Act on October 20, 1982.

On October 27, 1982, Perry was arrested and charged with operating a motor vehicle under the influence of alcohol in violation of 21 *Del.C.* § 4177 as amended by H.B. 780. Under the provisions of the Act, the Department commenced the newly prescribed administrative proceedings to determine whether Perry's license should be revoked. After the commencement of the administrative procedures, Perry filed the action for

injunctive relief which led to this Certification by the Court of Chancery.

### The Barben Case

The following undisputed facts are all that need be added to the foregoing statement of facts:

On October 26, 1982, Barben was arrested and charged with operating a motor vehicle under the influence of alcohol, in violation of § 4177 as amended by H.B. 780. By transfer from the Justice of the Peace Court to the Court of Common Pleas, and upon Barben's refusal to waive the right of jury trial, the case came to the Superior Court. Shortly before the day for arraignment, the Superior Court submitted its pending Certification.

### II.

The Certification from the Court of Chancery presents the following Question of Law:

"Whether, assuming *arguendo* that the Governor has no power to reduce the amount of an appropriation under Article III, Section 18, the modifications to Chapters 27 and 41 of Title 21 of the Delaware Code contained in House Bill 780 are valid laws of the State of Delaware which must be enforced by the Department of Public Safety of the State of Delaware."

The Certification from the Superior Court presented the foregoing Question and the following additional Question:

"If the amendments to Chapters 27 and 41 of Title 21 of the Delaware Code contained in House Bill 780 are invalid, are the provisions of Title 21, Chapters 27 and 41 existing prior to October 19, 1982, still in effect?"

### III.

Perry and Barben contend that H.B. 780 did not become law for these reasons: that under *Del.Const.* Art. III, § 18,* the Governor lacked the authority to disapprove the appropriation provision of H.B. 780; that the line-item veto provisions of Art. III, § 18 apply only to appropriation bills as such and that, otherwise, the Governor may not approve a bill in part and disapprove it in part; that, therefore, the action of the Governor, in effect, amounted to a veto of the entire Bill and, therefore, no part of H.B. 780 became law.

The State contends that the Governor's action in purporting to reduce an item of appropriation was a nullity and, therefore, H.B. 780 is law because it was not vetoed in accordance with Art. III, § 18. Alternatively, the State argues that the attempted reduction of the appropriation item was, in effect, a permissible line-item veto under Art. III, § 18 and, therefore, the entire Bill was not vetoed.

### IV.

In the Questions presented by both Certifications, it is assumed, *arguendo,* that the

---

* *Del. Const.,* Art. III, § 18 provides in pertinent part:

"Section 18. Every bill which shall have passed both Houses of the General Assembly shall, before it becomes law, be presented to the Governor; if he approves, he shall sign it; but if he shall not approve, he shall return it with his objections to the House in which it shall have originated, which House shall enter the objections at large on the journal and proceed to reconsider it. If, after such reconsideration, three-fifths of all the members elected to that House shall agree to pass the bill, it shall be sent together with the objections to the other House, by which it shall likewise be reconsidered, and if approved by three-fifths of all the members elected to that House, it shall become a law; * * *. If any bill shall not be returned by the Governor within ten days, Sun-

days excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, * * *.

* * *

" * * * The Governor shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items of appropriation disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills, over the Executive veto. * * *." Other provisions of Art. III, § 18, dealing with the status of a bill after final adjournment of the General Assembly, are not pertinent here. It is undisputed that, because "recessed to the call of the Chair," both Houses were not in final adjournment.

Governor lacked the power to reduce the amount of an appropriation under Art. III, § 18. Accordingly, we do not consider that issue.

## V.

◼ The threshold issue of the Questions, as certified, is whether the Governor correctly exercised the line-item veto power, vested in him by Art. III, § 18, upon the appropriation provision of H.B. 780. We think not.

The controlling sentence of Art. III, § 18 is thus:

"The Governor shall have power to disapprove of any item or items of *any bill making appropriations of money, embracing distinct items,* and the part or parts of the bill approved shall be the law, and the item or items of appropriation disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills, over the Executive veto." (Emphasis supplied)

Upon the bases of its text, its historical background, and the great weight of authority, we hold that the above provision of Art. III, § 18 applies only to a bill containing more than one appropriation and "embracing distinct items."

First as to its text: due significance must be accorded to the plain and unambiguous plural terms appearing in the reference to "any bill making appropriations of money, embracing distinct items." The single appropriation provision of H.B. 780 does not fall within that category of bills. Only bills containing more than one "distinct" item of appropriation of money meet the language of § 18 providing for the Governor's authority to disapprove one part of a bill while approving another part.

Second, it is clear that the drafters of the line-item veto provision of Art. III, § 18 contemplated its application only to "appropriation bills." A delegate to the 1897 Con-

stitutional Convention remarked that Art. III, § 18 seemingly was taken from the Federal Constitution. Judge Spruance responded thereto as follows:

"Yes; except in that particle in which the Constitution of the United States was found to be defective—two particles—that the President's veto may be overridden by two-thirds of this vote. But there was another particle in which it does vary and as to which he has made no criticism, and that was this—two particles more, perhaps, in regard to his power of vetoing appropriation bills, in separating them, whether they were distinct items of appropriation, and he could veto part and approve part. As to that, I do not suppose anybody who is at all familiar with the legislation either of the Federal Government, or of the States, would object to now at this day, because we know so well how different subjects of appropriation are mingled together, some of which are wise, and some of which are dreadfully unwise, and when the President has always been hampered by an inability to do anything except to accept the whole or reject the whole.

*"Provisions in regard to his power to veto separate items over appropriations bills, have been adopted into all the new Constitutions, and the absence of it in the Federal Constitution is a fact greatly to be lamented."* (Emphasis supplied) *Debates and Proceedings of the Constitutional Convention of the State of Delaware 1896–1897,* Vol. 1 p. 232.

Finally, the great weight of authority supports the conclusion that the application of a constitutional line-item veto provision such as ours must be limited to bills which contain "distinct items" ** of appropriation and may not be applied to bills which contain only a single item of appropriation: *State v. Okla. Bd. of Corrections,* Okla. Supr., 614 P.2d 551 (1980); *State v. Olson,* N.D.Supr., 286 N.W.2d 262 (1979); *Cenarrusa v. Andrus,* Idaho Supr., 582 P.2d 1082

---

** The language "distinct items" and "distinct terms" appear to be words of art in common usage in state constitutional provisions authorizing line-item veto of appropriations.

(1978); *Regents of State University v. Trapp,* Okla.Supr., 28 Okl. 83, 113 P. 910 (1911); *State v. Holder,* Miss.Supr., 76 Miss. 158, 23 So. 643 (1898).

\* \* \* \* \* \*

We conclude that the Governor was not empowered, under *Del. Const.* Art. III, § 18, to disapprove by line-item veto the single item appropriation in H.B. 780; that, therefore, the Governor's action did not accomplish his purpose of approving and enacting the Bill into law in part, and disapproving and not enacting it into law in part.

## VI.

■ This then leads to the ultimate question for decision: Did all of H.B. 780 become law, in the form passed by the General Assembly, or did none of it become law? By virtue of *Del. Const.* Art. III, § 18, of prior Opinions of the Justices of this Court, and of other eminent authorities, we are compelled to hold that H.B. 780 *in toto* has failed of enactment into law.

The enactment of a law in this State must be in strict accordance with the provisions of the State Constitution, Art. III, § 18. The present status of H.B. 780 fits nowhere in the constitutional format for the valid enactment of a statute: It has not been approved by the Governor in its entirety by signature; it does not meet the constitutional exception for line-item or partial veto; it has been returned to the House of Representatives within 10 days of its receipt under cover of a veto message, thus preventing it from becoming law without the Governor's approval; it now rests in the House and has not been reconsidered and repassed in both Houses. Thus, there is no provision of Art. III, § 18 under which it may be held that H.B. 780 now stands validly enacted into law.

The State takes the position that since the Governor's action in seeking to reduce the appropriation was a "nullity," H.B. 780 has not been vetoed in any respect and, therefore, is law. The position is untenable and in conflict with prior Opinions of the Justices of this Court holding that, under Art. III, § 18 of our Constitution, an invalid partial veto of a bill nullifies a partial approval of the bill and results in its failure of enactment. We adhere to that rule.

In *Opinion of the Justices,* Del.Supr. 210 A.2d 852 (1965), a Bill containing 14 sections was presented to the Governor. He attempted to approve the first 13 sections over his signature and to line-item veto Section 14. It was held that the partial veto power did not apply because an appropriation bill was not involved; that the Governor's disapproval of Section 14 nullified his attempt to approve the other Sections; and that no part of the Bill became law. That *Opinion of the Justices* was based upon the following rationale:

"Since the attempted veto of Section 14 was of no force and effect the bill as an entirety either must be deemed approved by the Governor, in which event it is the law, or as an entirety it must be deemed to have failed of approval by the Governor, in which event it is not the law.

"*We are of the opinion that since the bill as an entirety has failed to receive the approval of the Governor, it failed of enactment. Article 3, Section 18 of the Constitution, with the exception of bills appropriating money, requires the Governor to approve or not approve an entire bill submitted to him.* \* \* \*.

"Thus it is, we think, that *an attempted partial veto of a non-appropriation bill by the Governor makes nugatory his attempted approval of the balance of the bill.* To conclude otherwise would permit the Governor to cause a law to be enacted in which the Senate and House have not concurred. At the same time, to conclude that since the veto of the portion is a nullity the Governor's approval of the balance must be held to include the portion rejected by the abortive veto would be to ascribe to the Governor an approval he has demonstrated he did not have."

210 A.2d at 854–55. (Emphasis supplied)

■ The rationale underlying the entire governmental concept here involved, which

we find persuasive and hereby adopt, was well stated by the Justices of this Court in the foregoing Opinion as follows:

"Furthermore, fundamental constitutional consideration requires that this be so. The legislative process for the enactment of law established by our Constitution contemplates the formulating of proposed laws by the Houses of the General Assembly, and the submission of a proposed law to the Governor for his approval or disapproval. In effect, the Governor and the Houses of the General Assembly are a legislative team, but each has separate and distinct functions in the enactment of laws. It is the function of the Senate and House to agree upon the form and substance of a law, and, generally speaking, it is the function of the Governor to act as a check upon the final enactment of that law. In doing so, he must approve or disapprove it as a whole for he has no constitutional power to alter the content of a proposed law submitted to him, except as to appropriations of money."

210 A.2d at 855.

The principles endorsed in the foregoing *Opinion of the Justices* were adhered to in the more recent *Opinion of the Justices*, Del.Supr., 306 A.2d 720 (1973). There, the Attorney General had previously ruled (just as the State here contends) that an invalid line-item veto left the entire Bill valid and operative as though the veto had not occurred. The Justices expressly disagreed, endorsing the rationale of the 1965 Opinion, above quoted, and stating:

"The fundamental constitutional requirement of agreement on an entire piece of legislation between the House and Senate and the Governor is necessary whether the proposed legislation is an appropriation bill or a matter of general law, subject only to the authority conferred by Article III, Section 18 of the Constitution permitting a partial veto by the Governor of an item of appropriation."

"Consequently, it follows that, even though proposed legislation be an appropriations bill in some respects, if the Governor attempts to veto a portion of the bill, itself, which is not an appropriation but is a matter of general law, that indicates a lack of agreement between the Governor and both Houses of the General Assembly and, *therefore, there has been no approval of the proposed legislation as an entirety by the Governor. Accordingly, that absence of approval necessitates the conclusion that the law has not been validly enacted.*" (Emphasis supplied)

306 A.2d at 723-24; *accord, Okla. Bd. of Corrections,* 614 P.2d at 556; *Regents of State University v. Trapp,* 113 P. at 914.

\*    \*    \*    \*    \*    \*

For the foregoing reasons, we must conclude that H.B. 780 in its entirety failed of enactment. The result is regrettable but necessary, we think, by a proper construction of our Constitution.

Accordingly, the Question presented by the Certification of the Court of Chancery is answered in the Negative.

### VII.

In view of the Negative Reply to the first Question, the additional Question presented by the Certification from the Superior Court is answered in the Affirmative.